929 So.2d 588 (2006)
Sergio CORONA, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-2850.
District Court of Appeal of Florida, Fifth District.
April 28, 2006.
*589 Steven G. Mason, of Law Offices of Steven G. Mason, Orlando, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Wesley Heidt, Belle B. Schumann and Timothy D. Wilson, Assistant Attorneys General, Daytona Beach, for Petitioner.
GRIFFIN, J.
This case is on remand from the United States Supreme Court for reconsideration in light of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
The following facts are relevant to our opinion: On January 25, 2002, Sergio Corona ("Corona") and his family were vacationing in Orlando, Florida. The family was accompanied by relatives of Mrs. Corona. The entire group shared a suite at the Westgate Resort near Walt Disney World. Shortly after midnight, Mrs. Corona walked into the bedroom she was sharing with Corona and witnessed her husband performing oral sex on the couple's eleven-year-old daughter, A.C. Mrs. Corona lunged at her husband, who did not realize someone had entered the room, and pulled him up by the hair. He immediately fled the suite, pursued by Mrs. Corona and her relatives, then got in the family van and drove back to Chicago. Mrs. Corona tried to get a security guard to stop her husband as he drove away. The guard refused, but he did report the *590 incident to his supervisor and the police were called. Mrs. Corona was very upset when she spoke with the police and offered little useful information. A.C., however, was able to give a statement describing the crime in detail.
Mrs. Corona and A.C. returned to Chicago with other family members. Serendipitously, two days later, they crossed paths with Corona on the Eisenhower Expressway. The family blocked Corona's van with their own SUV and refused to allow Corona to drive away. When police arrived, they found a white van in a traffic lane blocked by a black SUV. Corona was sitting in the van. More than ten irate people were on the highway, crying and yelling and trying to get at Corona. Officer Malkowski put Mr. Corona in his police car for his own protection. Corona exclaimed to him: "I can't believe I did it," and, "Why did I do it?" Officer Malkowski learned from the family members that they were angry with Corona because he had sexually assaulted the youngest daughter while they were on vacation in Florida. They said they had made a complaint to police, but that Corona had fled the scene, and they had just crossed paths with him on their way home to Chicago. Upon learning this, Officer Malkowski took Corona into custody and read Corona his rights.
A detective interviewed Mrs. Corona and A.C. in Spanish. A.C. reported that she had been on the bed with her father, who had pulled her underwear to one side and put his mouth on her genital area. Officer Malkowski, joined by State Trooper Ewald, then interviewed Corona for several hours. During the interview, Corona confessed to placing his mouth on A.C.'s genital area during the family's Florida vacation. He said his wife came into the room and saw what he was doing. At that point, he got up and ran away.
Corona was charged with committing the crime of capital sexual battery against A.C., who was less than twelve years old. § 794.011(2), Fla. Stat. (2000). Mrs. Corona and A.C. were initially cooperative with police, and the State intended for them to testify at trial. However, several weeks before trial, the State realized that A.C. and her mother, who lived in Illinois, would not appear at trial voluntarily. The State attempted to compel Mrs. Corona's attendance at trial, but repeated attempts to locate her were unsuccessful.
Because of Mrs. Corona's and A.C.'s refusal to cooperate, the State was forced to prove its case through the testimony of Deputy Jocelyn Avilis, who testified at trial to statements made by A.C. when reporting the incident. The court held a hearing on the admission of this hearsay evidence immediately before trial. Evidence regarding A.C.'s "unavailability" was presented through the testimony of Elizabeth Salgado-Valentini ("Salgado"), an investigator with the Cook County Illinois State Attorney's Office, who had attempted to locate Mrs. Corona in Illinois. According to Salgado, Mrs. Corona actively evaded numerous attempts to serve her at various locations and repeatedly hung up the telephone when called by investigators. The investigators' efforts continued through August 2, 2002, at which point Salgado went to the Cook County courthouse and had material witness warrants issued for Mrs. Corona and A.C. Copies of the warrants were introduced into evidence. However, the warrants were not executed in time to secure the appearance of Mrs. Corona or A.C. before trial.
The trial court agreed with the State that Mrs. Corona was not cooperating and that, consequently, A.C. was "unavailable" as a witness within the meaning of section 90.803(23), Florida Statutes. The court explained:

*591 In terms of unavailability, I'm finding that the child is unavailable. It's obvious the mother is evading any efforts to cooperate with this case, and stated so to the police officials up in Illinois; evade any efforts to serve, is not going to cooperate. The child was unable to be secured for testimony despite having issued various warrants to the mother to get the child here for trial.
The court also found that A.C.'s statements were sufficiently reliable for admission. In light of the court's ruling, defense counsel made a non-specific objection that the admission of A.C.'s statement violated Corona's right to "confrontation."
At the commencement of the second day of trial, the following transpired:
THE COURT: Ready to go forward, back with the trial?
[PROSECUTOR]: Yes, Your Honor.
[DEFENSE COUNSEL]: Yes, Your Honor. At this time, I'd like to renew all previous objections.
THE COURT: Any one in particular?
[DEFENSE COUNSEL]: Yes, Your Honor, the child's hearsay statements coming in, my client's admissions coming in; any  I'm not sure if the State's tried to bring any statements of Victoria Corona  but if they do, any of those, as well.
THE COURT: Do you want  you're objecting in advance? Is that what you're doing?
[DEFENSE COUNSEL]: I assumed yesterday when they were speaking about statements coming in that they had also included Victoria's statements. If not, I apologize and I'm wrong.
THE COURT: Let's bring in the jury.
At trial, Deputy Avilis testified over a hearsay objection that A.C., in reporting the incident, said that her father had come into the bedroom, put his hand on A.C.'s shoulder, and told her she was pretty. Her father then laid her down on the bed, pulled her clothing to the side, and put his mouth on her "toto."[1] Her mother came into the bedroom, saw what was happening, and started screaming and hitting the father. No confrontation objection was made as required under Florida law. See Philmore v. State, 820 So.2d 919, 932-33 (Fla.2002); Hardwick v. Dugger, 648 So.2d 100, 107 n. 5 (Fla.1994); Sedney v. State, 817 So.2d 1074, 1075 (Fla. 5th DCA 2002);
The two Chicago police officers who had taken Corona into custody in Illinois testified that Corona had confessed to the offense. Officer Malkowski testified that when he first placed Corona in his vehicle, Corona started saying in English: "I can't believe I did it. Why did I do it? That's my daughter." Malkowski said that he read Corona his rights, but on the way to the police station, Corona initiated conversation and said over and over in English, "I can't believe I did that. Why did I do it? That is my daughter. This is my family. I couldn't help myself." At the station, when Corona was interviewed by both Officer Malkowski and Trooper Ewald, he confessed that he had put his mouth on A.C.'s genital area under her clothing.[2]
At trial, Corona denied ever touching his daughter sexually. He said his wife mistook a hug he gave his daughter for improper touching. He fled to Chicago because his wife was so upset. He admitted that while he was in Officer Malkowski's patrol car, he kept saying, "I can't believe I did it." However, he said he meant that *592 he could not believe he left his family in Florida.
Based on this evidence, the jury convicted Corona of capital sexual battery and he was sentenced to life in prison. Among the issues raised on appeal were that the trial court erred in admitting the hearsay statements of his daughter, A.C. The judgment and sentence were per curiam affirmed by this court in June 2003. Corona v. State, 853 So.2d 430 (Fla. 5th DCA 2003). Corona then filed a petition for certiorari review to the United States Supreme Court. The United States Supreme Court decided Crawford v. Washington in March 2004. Corona's petition was thereafter granted and the case was remanded to this court for reconsideration in light of Crawford. See Corona v. Florida, 541 U.S. 930, 124 S.Ct. 1658, 158 L.Ed.2d 352 (2004).
In Crawford, the Supreme Court held that a testimonial hearsay statement is inadmissible at trial unless the declarant is shown to be unavailable and the party against whom the statement is admitted had an opportunity for cross-examination. Chandler v. Crosby, 916 So.2d 728, 729 (Fla.2005). The case overruled earlier precedent that allowed a court to admit hearsay testimony against a criminal defendant if that testimony "bore particularized guarantees of trustworthiness." See Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).[3]
Corona argues that, even though Crawford was decided after his trial and state appeal, A.C.'s hearsay statements to Deputy Avilis were admitted in violation of Crawford, and he is entitled to have his conviction reversed based on Crawford. He correctly argues that Crawford must be applied to all "pipeline" cases  that is, all cases pending on review or not yet final when the decision was issued. See Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (all of Supreme Court's decisions applying or announcing rules of criminal law must be "applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a `clear break' with the past."). However, we must also consider the separate issue of whether his federal constitutional claim has been preserved for review in accordance with state law requirements. See Williams v. State, 773 S.W.2d 525 (Tex.Crim.App.1988) (en banc); see also Smith v. State, 598 So.2d 1063, 1066 (Fla.1992) (adopting Griffith rule for decisions made by the Florida Supreme Court provided defendant timely objected at trial if an objection was required to preserve issue for appellate review).
In Florida, it is well-settled that "[t]o be preserved for appeal, `the specific legal ground upon which a claim is based must be raised at trial and a claim different than that will not be heard on appeal.'" Spann v. State, 857 So.2d 845, 852 (Fla.2003) (quoting Rodriguez v. State, 609 So.2d 493, 499 (Fla.1992)). This rule has been applied in the context of pipeline cases, requiring a defendant to argue for a change in the law in order to preserve the *593 issue for appeal. See, e.g., Cardenas v. State, 816 So.2d 724 (Fla. 1st DCA 2002) (change in law must be argued to trial court to preserve issue for review); Leveritt v. State, 817 So.2d 891, 896-97 (Fla. 1st DCA 2002) (same); Seaman v. State, 608 So.2d 71 (Fla. 3d DCA 1992) (same). Here, Corona made a generic argument pretrial that his "confrontation" rights were being violated, once the court determined that A.C.'s hearsay statements were sufficiently reliable to be admitted. However, he never specifically argued, as did the defendant in Crawford, that the test for admission of this evidence, as outlined in Ohio v. Roberts, should be reconsidered. Instead, he primarily addressed the issue within the existing framework of Ohio v. Roberts, contending that the victim's statements were unreliable hearsay. Then, at trial, Corona simply objected that the testimony was impermissible hearsay. These actions are insufficient to preserve the Crawford issue for review. See Mencos v. State, 909 So.2d 349 (Fla. 4th DCA 2005) (hearsay objection to infant victim's statements did not preserve for review any challenge based on Sixth Amendment right to confront witnesses); Bunton v. State, 136 S.W.3d 355 (Tex.App.2004) (stating that hearsay objection and confrontation objection are not necessarily coextensive or synonymous and stating that specific Crawford objection had to be made, arguing for change in law).[4] The State conceded the preservation issue on appeal, but the concession was in error and, accordingly, is not binding on this Court. Perry v. State, 808 So.2d 268, 268 (Fla. 1st DCA 2002) ("[I]t is the practice of Florida appellate courts not to accept erroneous concessions by the state.").
We also decline to hold that the use of evidence in violation of Crawford is fundamental error, which would allow us to review the issue even in the absence of an objection. See J.B. v. State, 705 So.2d 1376, 1378 (Fla.1998)(constitutional issues may be considered for first time on appeal even in absence of objection where they constitute fundamental error). Fundamental error is error that "goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process." Id. In Chandler, in refusing to give Crawford retroactive application, the Supreme Court of Florida explained that Crawford simply announced a new "procedural" rule which was designed to control the admissibility of testimonial hearsay, but was not designed to improve the accuracy of trials or even the reliability of evidence. It simply changed the manner in which reliability will be assessed. 916 So.2d at 730. See also Crawford, 541 U.S. at 60, 124 S.Ct. 1354 ("[Crawford] commands, not that evidence be reliable, but that reliability be assessed. . . by testing in the crucible of cross-examination."). The failure to use the new standards outlined in Crawford can hardly be said to involve a denial of due process when the reliability of the evidence about which Corona complains was in fact assessed under Ohio v. Roberts, which has been satisfactorily used by the courts for more than twenty years. See also United *594 States v. Solomon, 399 F.3d 1231, 1237-38 (10th Cir.2005) (finding a Crawford error had not been preserved and refusing to address it in the absence of a determination that it was plain error).
Even if the issue were properly before this Court, Corona would not be entitled to relief. We agree with Corona that the statements involved in this case were testimonial, as they were elicited by Deputy Avilis at the Westgate Resort during questioning of A.C.[5] which took place shortly after the incident. Bartee v. State, 922 So.2d 1065, 1070 (Fla. 5th DCA 2006) (statements made in response to questioning by police officer who is investigating a crime were testimonial under Crawford); Lopez v. State, 888 So.2d 693 (Fla. 1st DCA 2004) (same); see also Herrera-Vega v. State, 888 So.2d 66 (Fla. 5th DCA 2004), review denied, 902 So.2d 790 (Fla.2005) ("`Testimonial' statements principally are those made with the expectation that they will be used for the purposes of a criminal prosecution."). However, the State met its burden of showing both that A.C. was "unavailable" for trial and that Corona had a prior opportunity to cross-examine the victim.
It is well-established that in order to prove that a witness is "unavailable" for the purposes of the Confrontation Clause, the State must show it made a good-faith effort to obtain a witness's attendance at trial. Ohio v. Roberts, 448 U.S. at 74, 100 S.Ct. 2531; Barber v. Page, 390 U.S. 719, 724-25, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). "Unavailability" is similarly defined under Florida's hearsay statutes to include a declarant (e.g. A.C.) who:
[i]s absent from the hearing, and the proponent of the statement has been unable to procure the declarant's attendance or testimony by process or other reasonable means.
§ 90.804(1)(e), Fla. Stat. (2001). The trial court's determination that a witness is "unavailable" for confrontation purposes involves a mixed question of law and fact which this court reviews de novo, giving deference to the basic, primary or historical facts as found by the trial court. See Martinez v. Sullivan, 881 F.2d 921, 926 (10th Cir.1989) (citing Burns v. Clusen, 798 F.2d 931, 940-942 (7th Cir.1986)).
In the present case, the evidence showed that A.C. and her mother seemed cooperative with the State until shortly before trial, which necessitated a request for continuance by the State. Two days after receiving a continuance on July 17, 2002, the State on July 19, 2002 sought and was granted a Certificate of Interstate Extradition from Orange County circuit court. See § 942.03, Fla. Stat. (2001). However, Mrs. Corona actively evaded numerous attempts to serve her at various locations and repeatedly hung up the telephone when called by investigators. The investigators' efforts continued through August 2, 2002, at which point Salgado went to the Cook County courthouse and had material witness warrants issued for Mrs. Corona and A.C., which also could not be served. This was sufficient to demonstrate a good faith effort on the part of the prosecution to secure A.C.'s attendance at trial, which began on August 5, 2002. Corona argues that the process was started too late to be meaningful, but it was the mother's concerted efforts to avoid service, not the lateness of the efforts *595 made by the State, that prevented the State from securing the presence of the victim and/or her mother at trial.
Corona also had a constitutionally adequate opportunity to cross-examine A.C., as required by Crawford. On June 7, 2002, Corona exercised the opportunity provided under the Florida Rules of Criminal Procedure to take a pretrial deposition of A.C. and Mrs. Corona, examining both extensively under oath. See Blanton v. State, 880 So.2d 798 (Fla. 5th DCA 2004); accord Liggins v. Graves, No. 4:01-CV-40166, 2004 WL 729111, at *7 (S.D.Iowa Mar. 24, 2004) (transcript of a witness's deposition taken two years after murder and six months before trial admissible under Crawford); Howard v. State, 816 N.E.2d 948 (Ind.Ct.App.2004) (deposition of child victim in molestation case admissible at trial, although defendant not present during deposition, because the deposition had afforded an opportunity for cross-examination).
Corona argues at some length that he had a right to a face-to-face confrontation, as part of his confrontation rights that could not be satisfied by a deposition, since he had no absolute right to attend a deposition. See generally Fla. R.Crim. P. 3.220(h)(7) ("A defendant shall not be physically present at a deposition except on stipulation of the parties or as provided by this rule. The court may order the physical presence of the defendant on a showing of good cause."). However, as in Blanton, there is nothing in the record to suggest that Corona asked for and was denied the right to be present when his daughter was deposed. Thus, we decline to address the extent of his right to engage in a face to face confrontation of the victim.[6]
We are aware that two other district courts of appeal have now certified conflict with Blanton. See Belvin v. State, 922 So.2d 1046 (Fla. 4th DCA 2006) (en banc); Lopez, 888 So.2d at 693. However, we remain committed to our holding in that decision. Florida, unlike many state criminal systems and the federal courts, permits the taking of discovery depositions in criminal cases as a matter of course. See *596 Fla. R.Crim. P. 3.220. The depositions cannot be used as substantive evidence, but the depositions can be used for impeachment.[7] A defendant is therefore able to use the depositions to obtain evidence sufficient to satisfy a defendant's confrontation rights. See Steinhorst v. State, 412 So.2d 332, 337 (Fla.1982)("The proper purposes of cross-examination are: (1) to weaken, test, or demonstrate the impossibility of the testimony of the witness on direct examination and, (2) to impeach the credibility of the witness, which may involve, among other things, showing his possible interest in the outcome of the case.").
Although a defendant has no absolute right to attend a deposition, the rule allows a defendant to be present for "good cause." Seemingly, "good cause" would include exercise of a confrontation right. Moreover, review of the depositions of A.C. and Mrs. Corona reveal a thorough, detailed interrogation. Unless the "prior opportunity to cross-examine" repeatedly referred to by the court in Crawford means something other than the plain meaning these words convey, Corona certainly had a prior opportunity under Florida's criminal practice to confront and to cross-examine his daughter.
Our view that a pretrial deposition can satisfy the "prior opportunity to cross-examine" requirement of Crawford will not adversely affect the confrontation rights of a defendant, who is on notice that he must use pretrial opportunities to cross-examine the victim or he will be deemed to have waived them. As was explained in a recent article:
Cautious defense counsel should consider Crawford fair warning that squandered opportunities may be viewed as waivers. In particular, if the prosecution produces a child for a preliminary hearing or a deposition, defense counsel might be well-advised to conduct as full a cross-examination as is possible given the state of discovery at the time if there is any doubt whether the child might appear at trial. While a couple of courts have questioned whether probable-cause preliminary hearings and discovery-driven depositions constitute adequate opportunities for confrontation, commentators are encouraging prosecutors to present witnesses at these hearings on the assumption that Crawford will tolerate the admission of their testimonial statements at trial if they later become unavailable.
Daniel E. Monnat, Paige A. Nichols, The Kid Gloves are Off: Child Hearsay After Crawford v. Washington: 30-FEB. CHAMPION 18, 21 (January/February 2006).
Corona objects that A.C.'s deposition was not filed with this court until after the case had been remanded to this court by the United States Supreme Court. He contends that the deposition therefore cannot be considered as part of the record on appeal. However, on remand, this court allowed the State to supplement the record with a copy of this deposition in the interest of justice. Corona did not raise the Crawford issue until after trial, so the State was unable to complete the record regarding the Crawford issue. If defendant is to be allowed to raise this issue post-trial, then the State must be permitted to respond to the issue post-trial. We find no error in the procedures used in this case and no merit in any of the remaining issues raised by Corona on appeal.
Affirmed.
ORFINGER and MONACO, JJ., concur.
NOTES
[1] Deputy Avilis testified that "toto" meant vagina.
[2] The confession was not taped.
[3] Crawford's rejection of Ohio v. Roberts was significant in the context of child hearsay offered in sexual abuse cases under section 90.803(23) because the Florida Supreme Court relied on Ohio v. Roberts in finding that the introduction of child hearsay under section 90.803(23), Florida Statutes, met the requirements of the confrontation clause in cases in which the victim did not testify at trial. See Perez v. State, 536 So.2d 206 (Fla. 1988). Prior to Crawford, evidence admissible under Ohio v. Roberts was almost by definition admissible under the confrontation clause. Crawford undermines this analysis since it acts to separate the confrontation analysis from the hearsay analysis.
[4] Some courts have excused the preservation requirement in Crawford cases on the basis that Crawford represented an unforeseeable change in the law. See, e.g., People v. Cage, 15 Cal.Rptr.3d 846 (2004), review granted on other grounds, 19 Cal.Rptr.3d 824, 99 P.3d 2 (2004) (explaining that Crawford involves a "paradigm shift" in the Confrontation Clause analysis, and counsel could not have foreseen a "bombshell" like Crawford and holding that the issue did not have to be expressly raised in the trial court because the pertinent case law had changed so unforeseeably that it was unreasonable to expect trial counsel to have anticipated the change by making an objection). These cases are not consistent with Florida's preservation requirements.
[5] At various points in their briefs, the parties imply or state that there is a Confrontation Clause issue with respect to the testimony of both A.C. and her mother, Mrs. Corona. However, no witness testified to any incriminating statements by Mrs. Corona, and so the discussion is limited to the admission of A.C.'s statements.
[6] The Confrontation Clause affords two types of protection to a criminal defendant  "the right physically to face those who testify against him, and the right to conduct cross-examination." Coy v. Iowa, 487 U.S. 1012, 1017, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)). The right to physically face one's accuser was involved in Coy, in which the defendant had been charged with sexually assaulting two thirteen-year-old girls while they were camping out in the backyard of the house next door to him. At trial, the girls were permitted to testify behind a large screen based on a statute that imposed a presumption of trauma due to the abuse. The Court found that the use of this legislatively imposed presumption violated Coy's right of face-to-face confrontation. The Court left open for another day the question of whether there were exceptions to a defendant's right to face-to-face confrontation. 487 U.S. at 1021, 108 S.Ct. 2798. In Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Court later held that the right to physically confront the witnesses against oneself was not absolute, as it is not the sine qua non of the Confrontation Clause. Id. at 847, 110 S.Ct. 3157. Instead, the Court recognized that "the Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial," id. at 848, 110 S.Ct. 3157, and characterized the Clause as a "preference" that "must occasionally give way to considerations of public policy and the necessities of the case." Id. at 849, 110 S.Ct. 3157 (quoting Mattox v. United States, 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895)). In Craig, the Supreme Court thus approved a statutory procedure which, when invoked, permitted child victims of sexual abuse to testify at trial by means of a one-way closed circuit television, out of the presence of the defendant, if the court made the findings required by the statute.
[7] See Fla. R.Crim. P. 3.220(h); State v. Green, 667 So.2d 756 (Fla.1995).