QUINCE, J.
Sergio Corona seeks review of the decision of the Fifth District Court of Appeal *1235 in Corona v. State, 929 So.2d 588 (Fla. 5th DCA 2006). The case on review expressly and directly conflicts with the decisions of this Court in State v. Lopez, 974 So.2d 340 (Fla.2008), and Blanton v. State, 978 So.2d 149 (Fla.2008), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
The conflict issue in this case concerns a defendant’s Sixth Amendment right to confrontation. Specifically, the issue is whether a discovery deposition satisfies the United States Supreme Court’s mandate concerning confrontation, outlined in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), that a defendant be given a prior opportunity to cross-examine a declarant of a testimonial statement. The Fifth District Court of Appeal held that the prior deposition in this case fulfilled Corona’s “prior opportunity to cross-examine.” Corona, 929 So.2d at 596. Subsequently, we issued our decisions in Lopez and Blanton, holding that a discovery deposition did not comply with Crawford’s cross-examination requirement. Lopez, 974 So.2d at 347-50; Blanton, 978 So.2d at 155.
In light of our prior decisions in Lopez and Blanton, we reaffirm that a discovery deposition is not the equivalent of a prior opportunity for cross-examination. Because Corona did not otherwise have an opportunity to cross-examine the declarant in this case, we conclude that Corona’s constitutional right to confrontation was violated. Moreover, because this constitutional violation resulted in the admission of improper evidence and constitutes harmful error, as explained below, we conclude that Corona is entitled to a new trial. Therefore, we quash the decision of the Fifth District and remand this case to the district court with directions to vacate Corona’s conviction and sentence and remand to the trial court for a new trial.

Facts and Procedural History

The facts relevant to this case are as follows. Appellant, Sergio Corona, was convicted of the capital sexual battery of his eleven-year old daughter, A.C. The conviction stemmed from an incident that occurred while Corona and his family were vacationing in Orlando, Florida, from their home in Illinois. The family included Corona, his daughter, A.C., his wife, Victoria Corona (hereinafter Victoria), and Victoria’s relatives.
The State initially anticipated that Victoria and A.C. would testify at the trial. However, Victoria later became uncooperative, and the State was unsuccessful in its attempts to procure her or AC.’s attendance for trial.[1] At a subsequent hearing on the admissibility of A.C.’s hearsay statements that were made to police officers immediately after the incident, the trial court ruled, over Corona’s arguments to the contrary, that A.C.’s statements were admissible.
Thus, the primary evidence presented at the 2002 trial against Corona became the hearsay statements of A.C., in addition to later statements made by Corona to police officers in Illinois. During her opening statement, the prosecutor informed the jury that they would hear testimony that A.C. stated Corona placed his mouth on her vagina and testimony that Corona admitted to the crime. A.C.’s statements were presented through the testimony of Deputy Jocelyn Avilas of the Orange County Sheriffs Department, over Corona’s objections. According to Avilas, A.C. stated that Corona laid her down on the bed, pulled her panties to the side, and *1236 placed his mouth on her “toto.”[2] A.C. then told Avilas that her mother came into the room and started screaming and hitting Corona. It was later revealed at trial that Corona fled the hotel room after being attacked by Victoria, took the family van, and drove to Chicago.
In regard to Corona’s statements made concerning the incident, Corona filed a motion to suppress, which was denied by the trial court after a hearing. Thus, the statements were presented at trial through the testimony of Officer Jerome Maikow-ski, a Chicago police officer, and Trooper Susan Ewald, an Illinois state trooper. Officer Maikowski testified that on January 27, 2002, he received a call to assist a state trooper on the Eisenhower Expressway. When he arrived, Maikowski observed an individual, later identified as Corona, sitting in a van that was blocked by several other vehicles. Maikowski also noticed a large group of people that were yelling and attempting to get to Corona. Maikowski tried to calm the group down and placed Corona in the back seat of his police vehicle in order to defuse the situation. Once placed in the squad car, Corona stated, “I can’t believe I did it. Why did I do it? That’s my daughter.” Mai-kowski then spoke to some individuals in the group to determine the cause of the disturbance. After speaking to these individuals and a state trooper, Maikowski went back to his vehicle and handcuffed Corona, placing Corona under arrest.[3] During Maikowski’s subsequent drive to a police substation, Corona repeatedly made statements such as, “This is my daughter. This is my family. I couldn’t help myself.” During a later interview, Corona confessed that he pulled his daughter’s panties to the side and placed his mouth on her genital area. He also admitted that he ran out of the room when Victoria arrived.
Trooper Ewald testified that she was also called to a disturbance on the Eisenhower Expressway, where she observed a van being blocked by a sport utility vehicle. She also noticed a group of approximately ten people yelling, screaming and crying, with the screaming and hollering directed towards Corona. Ewald spoke with Victoria, then walked to Officer Mai-kowski’s car and asked Corona for a driver’s license, which he provided. Subsequently, at the substation, Ewald again spoke with Victoria and also A.C. Finally, Ewald interviewed Corona with Maikow-ski, during which time Corona confessed to putting his mouth on his daughter’s vagina.[4]
Neither officer recorded Corona’s statements at the time of the alleged confession, although Ewald did complete a field report for the case. Ewald testified that she completed a second report approximately six months later which did include Corona’s confession. The report was completed at the request of an Orlando detective and a state attorney. After Ewald’s testimony, the State rested its case. Corona then moved for a judgment of acquittal, which was denied by the trial court.
Corona testified as the only defense witness at trial. According to Corona, he and *1237 Victoria were having marital difficulties and had argued while the family was vacationing in Orlando. On the night of the incident, he was giving his daughter a hug in order to give her a kiss. He stated that he never put his mouth on his daughter’s private areas, but Victoria came in and started screaming, scratching, and biting Corona. He then ran away because he did not want anyone to get hurt and he was upset. He traveled to Chicago and was stopped by a car a couple of days later. Victoria came out of the car and began hitting his van door. According to Corona, Victoria was the only angry person in the group, as the others were trying to calm her down. When the police arrived, they handcuffed him and placed him in the squad car. When the officers began driving him to the police station, he stated, “I can’t believe I did it,” by which he meant that he could not believe he left his family in Florida. He never stated, “I can’t believe I did it to my daughter.”
Corona also testified that he did not give his license to Ewald because Victoria had his wallet which he had left in Florida. Corona also denied admitting to Maikow-ski and Ewald that he put his mouth on his daughter’s private parts. In fact, Corona testified that before coming to court, he did not know the meaning of “genital area” or “vagina.” Rather, Corona would refer to female sexual organs as “private parts.” He also had never heard the word “toto” before and had never heard his daughter use the word “toto.”
After Corona’s testimony, the defense rested and renewed the motion for judgment of acquittal, which again was denied by the trial court. During her closing argument, the prosecutor made repeated references to A.C.’s statements that had been presented through Avilas’s testimony. After deliberating, the jury returned a verdict finding Corona guilty of the charge of sexual battery on a child under the age of twelve. The jury also returned a special verdict finding Corona over the age of eighteen at the time of the offense.[5] The trial court sentenced Corona to life imprisonment.
Corona appealed his conviction and sentence to the Fifth District Court of Appeal, which per curiam affirmed both the judgment and sentence. Corona v. State, 853 So.2d 430 (Fla. 5th DCA 2003). Corona then filed a petition for certiorari review with the United States Supreme Court. While the petition was pending, the United States Supreme Court issued its decision in Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Supreme Court granted Corona’s petition and remanded the case to the Fifth District for further consideration in light of Crawford. See Corona v. Florida, 541 U.S. 930, 124 S.Ct. 1658, 158 L.Ed.2d 352 (2004).
On remand, the Fifth District agreed with Corona’s arguments that Crawford was applicable to his case. Yet the court noted that it had to determine whether his claim was preserved for review in accordance with state law requirements. The district court noted that in order to preserve an issue for appeal under Florida law, “the specific legal ground upon which a claim is based must be raised at trial and a claim different than that will not be heard on appeal.” Corona, 929 So.2d at 592 (quoting Spann v. State, 857 So.2d 845 (Fla.2003)). The district court recognized that this rule had been applied to cases that were pending on review or not yet *1238 final when a decision changing the law was issued. Corona, 929 So.2d at 593. Thus, the Fifth District concluded that a defendant was required to argue a change in the law to preserve the issue.
Here, the district court determined that Corona had made a “generic” pretrial argument that his “confrontation” rights were being violated, after the trial court determined that A.C.’s hearsay statements were reliable and admissible. However, Corona did not specifically argue that the test for the admission of this evidence, previously set out in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), should be reconsidered. Instead, he simply asserted that the victim’s statements were unreliable hearsay and objected at trial that the testimony was impermissible hearsay. The district court held that these arguments did not preserve the Crawford issue for appellate review. The court also recognized that the State conceded the preservation issue on appeal, but the court held this concession was made in error and was not binding on the court. Corona, 929 So.2d at 593. Moreover, the court stated that cases in which other courts had excused the preservation requirement in a Crawford case did not comport with Florida’s preservation requirements. Corona, 929 So.2d at 593 n. 4.
Additionally, the district court concluded that even if the issue had been preserved, Corona would not be entitled to relief. The court agreed that A.C.’s statements in this case were testimonial, but concluded that the State demonstrated that she was “unavailable” for trial, pursuant to Florida’s hearsay statutes and the Confrontation Clause, and that Corona had a prior opportunity to cross-examine her. Corona, 929 So.2d at 594. With regard to Corona’s prior opportunity for cross-examination, the district court noted that Corona took a pretrial deposition of both A.C. and Victoria, questioning them at length under oath. Corona argued that he had a right to a face-to-face confrontation and his confrontation rights could not be satisfied by deposition because he did not have an absolute right to be present at the deposition. However, the district court noted that similar to the case of Blanton v. State, 880 So.2d 798 (Fla. 5th DCA 2004), approved in result, 978 So.2d 149 (Fla.2008), the record in this case did not indicate that Corona had requested and was denied the right to attend his daughter’s deposition. Thus, the court declined to address the extent of Corona’s right to a face-to-face confrontation with A.C.
The court recognized that two other district courts had certified conflict with Blanton. Corona, 929 So.2d at 595 (citing Belvin v. State, 922 So.2d 1046 (Fla. 4th DCA 2006) (en banc), and Lopez v. State, 888 So.2d 693 (Fla. 1st DCA 2004), approved in part by, State v. Lopez, 974 So.2d 340 (Fla.2008)). However, the Fifth District did not depart from its Blanton decision, noting that Florida permits discovery depositions in criminal cases as a matter of course. The district court reasoned that depositions could be used for impeachment; thus, a defendant could use the depositions to obtain sufficient evidence to satisfy his confrontation rights. Corona, 929 So.2d at 595-96.
While the district court acknowledged that a defendant did not have an absolute right to be present at a deposition, the court recognized that a defendant could be present for “good cause,” which would appear to include the exercise of a confrontation right. Corona, 929 So.2d at 595 (quoting Florida Rule of Criminal Procedure 3.220(h)(7)). The district court again noted that a thorough, detailed interrogation had been conducted during the depositions of Victoria and A.C. Accordingly, the district court concluded that Corona had a *1239 prior opportunity to confront and cross-examine his daughter, unless the phrase “prior opportunity to cross-examine” in Crawford meant something other than what the plain meaning of the words conveyed. Corona, 929 So.2d at 596. The court posited that its view that a pretrial deposition could satisfy the requirements of Crawford would not adversely affect the confrontation rights of a defendant because defendants were now on notice that they had to use pretrial opportunities to cross-examine a victim or the right would be considered waived. Corona, 929 So.2d at 596. In light of the above, the Fifth District affirmed Corona’s conviction and sentence. Id.
Corona petitioned this Court for discretionary jurisdiction, but the case was stayed pending disposition of State v. Lopez, 974 So.2d 340 (Fla.2008). In Lopez, this Court ultimately held that a discovery deposition did not satisfy Crawford’s requirement that a defendant have a prior opportunity to cross-examine a declarant. Lopez, 974 So.2d at 350. The Court also issued its opinion in Blanton v. State, 978 So.2d 149 (Fla.2008), which reaffirmed its Lopez decision and disapproved the reasoning of the Fifth District in Blanton v. State, 880 So.2d 798 (Fla. 5th DCA 2004). In light of the Lopez and Blanton opinions, the Court issued a show cause order to both Corona and the State as to whether this Court should accept jurisdiction in this case, and subsequently accepted jurisdiction.

ANALYSIS

Corona raises several issues for this Court’s review. However, we limit our discussion in this case to the Crawford issue and the admissibility of two pieces of evidence presented at trial — statements made by A.C. and statements made by Corona — since they are dispositive to our review. We begin with an overview of the Sixth Amendment right of confrontation.
The Sixth Amendment right of confrontation provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” U.S. Const, amend. VI. The United States Supreme Court has held that a hearsay statement offered against the defendant violates this constitutional right if (1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In setting out what is constitutionally required, the Court receded from its prior decision in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which held that hearsay statements should be excluded absent a “showing of particularized guarantees of trustworthiness” and were admissible under the Sixth Amendment if they carried “adequate ‘indicia of reliability.’ ” Id. at 66, 100 S.Ct. 2531. The Crawford Court held that for testimonial statements, “the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.” 541 U.S. at 69, 124 S.Ct. 1354. In a subsequent opinion, the Court observed that “[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.” Davis v. Washington, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).
In the present case, we agree with the Fifth District’s determination that A.C.’s statements to Deputy Avilas were testimonial and that A.C. was unavailable for trial. While the Court in Crawford did not include an explicit definition of “testimonial” in its decision, it did hold that such *1240 statements included “prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and ... police interrogations.” 541 U.S. at 68, 124 S.Ct. 1354.[6] The Court later clarified that where the circumstances objectively indicate that there is no ongoing emergency and that the primary purpose of the police interrogation is to establish or prove past events potentially relevant to later criminal prosecution, statements in response to the interrogation are testimonial. Davis, 547 U.S. at 822, 126 S.Ct. 2266. In this case, A.C. was interrogated by Deputy Av-ilas, and the facts indicate that there was no ongoing emergency and that A.C.’s statements were taken to determine if criminal activity had occurred. See id. at 829-30, 126 S.Ct. 2266 (concluding that declarant’s statements were testimonial, although made after a domestic disturbance, partly because there was no emergency in progress and no immediate threat to the declarant’s person).
In addition, the Fifth District was correct in holding that A.C. was “unavailable.” As noted by the district court, “unavailability” occurs where the witness “[i]s absent from the hearing, and the proponent of a statement has been unable to procure the declarant’s attendance or testimony by process or other reasonable means.” Corona, 929 So.2d at 594 (quoting § 90.804(1)(e), Fla. Stat. (2001)). However, a declarant is not unavailable as a witness under the statute “if such exemption, refusal, claim of lack of memory, inability to be present, or absence is due to the procurement or wrongdoing of the party who is the proponent of his or her statement in preventing the witness from attending or testifying.” § 90.804(1)(e), Fla. Stat. (2002). Although Corona implies that the victim’s unavailability was caused by a lack of due diligence by the State, the facts in the record refute this claim. Victoria was initially cooperative in her husband’s prosecution. In her written statement filed with the Orange County Sheriff’s Office, Victoria stated that she would come back to Orlando to testify in this case. Both Victoria and A.C. participated in depositions on June 7, 2002. Victoria also testified at a motion to suppress hearing, which was held on June 19, 2002. However, once it became clear that Victoria no longer wanted to participate in the proceedings, the State requested a Certificate of Interstate Extradition on July 19, 2002. The trial court granted the request, but Victoria evaded subsequent attempts by investigators to contact her. Therefore, the extradition could not be completed. In light of the above, it is clear that *1241 the unavailability was not because of any unreasonable delay on the part of the State, but was because of Victoria’s last minute unwillingness to cooperate, which prevented any involvement of A.C. at trial.
However, in light of this Court’s recent precedent, the district court erred in holding that the pretrial deposition of A.C. afforded Corona an adequate opportunity to cross-examine the victim/declar-ant. In State v. Lopez, 974 So.2d 340 (Fla.2008), and Blanton v. State, 978 So.2d 149 (Fla.2008), this Court provided several reasons why such depositions do not meet Crawford’s cross-examination requirement. The Court held that Florida Rule of Criminal Procedure 3.220(h), which permits discovery depositions,
was not designed as an opportunity to engage in adversarial testing of the evidence against the defendant, nor is the rule customarily used for the purpose of cross examination. Instead, the rule is used to learn what the testimony will be and attempt to limit it or to uncover other evidence and witnesses. A defendant cannot be “expected to conduct an adequate cross-examination as to matters of which he first gained knowledge at the taking of the deposition.” This is especially true if the defendant is “unaware that this deposition would be the only opportunity he would have to examine and challenge the accuracy of the deponent’s statements.” [Moreover], a discovery deposition is not intended as an opportunity to perpetuate testimony for use at trial, is not admissible as substantive evidence at trial, and is only admissible for purposes of impeachment. [Finally], the defendant is not entitled to be present during a discovery deposition pursuant to rule 3.220(h). Thus, the exercise of the right to take a discovery deposition under rule 3.220 does not serve as the functional substitute for in-court confrontation of the witness.
Blanton, 978 So.2d at 155 (citations omitted) (quoting State v. Basiliere, 353 So.2d 820, 824-25 (Fla.1977)); see also Lopez, 974 So.2d at 347-50. Based on our analy-ses in Lopez and Blanton, it is clear that Corona lacked the prior opportunity for cross-examination as required by Crawford. Therefore, as Corona argues, and the State concedes, the admission of A.C.’s hearsay statements was improper.

Whether Corona Preserved the Crawford Issue

Violations of the Confrontation Clause, where preserved, are subject to harmless error analysis. State v. Contreras, 979 So.2d 896, 911 (Fla.2008). However, in this case, the State argues that Corona’s Confrontation Clause argument is unpreserved. Because there is a dispute between the parties as to whether Corona’s confrontation claim is preserved, we first analyze the objections made by Corona concerning A.C.’s statements before considering the effect the confrontation error had on Corona’s trial.
At the pretrial hearing on the admissibility of hearsay statements, the State asserted that A.C. was “unavailable” for trial. After hearing testimony from the State’s witnesses and argument from the State and Corona, the trial court determined that A.C. was unavailable as a witness and that her statements were reliable and admissible. After the trial court’s ruling, defense counsel argued that the admission of A.C.’s statements violated Corona’s constitutional right to confrontation. The trial court rejected this confrontation argument.
Subsequently, at trial, and immediately before the testimony of a State witness, defense counsel informed the court that she would like to renew all previous objec *1242 tions. When the court asked if counsel wanted to renew any in particular, she stated, in part, “the child’s hearsay statements coming in.” Later, during the testimony of Deputy Avilas, counsel objected on hearsay grounds when Avilas was questioned about statements made by A.C. The trial court then stated, “Rather than objecting to every single question that gets asked, why don’t we assume you have a standing objection to this line of questioning. And based upon prior rules [sic] by the court, I’m going to overrule those objections. But you’ve preserved your objection.”
In order for an appellate court to reverse a judgment or sentence on appeal, the asserted error must either be preserved or constitute fundamental error. To preserve the error, three requirements must be met:
First, a litigant must make a timely, contemporaneous objection. Second, the party must state a legal ground for that objection. Third, “[i]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.” The purpose of this rule is to “place [ ] the trial judge on notice that error may have been committed, and provide [ ] him an opportunity to correct it at an early stage of the proceedings.”
Harrell v. State, 894 So.2d 935, 940 (Fla.2005) (citations omitted) (quoting Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982); Castor v. State, 365 So.2d 701, 703 (Fla.1978)). These requirements are also codified in our statutes. Section 924.051, Florida Statutes (2002), outlines the “[t]erms and conditions of appeals and collateral review in criminal cases.” Specifically, section 924.051(3), Florida Statutes (2002), states in part, “An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error.” Subsection (1)(b) notes that an issue, legal argument or objection to evidence is preserved when it is “timely raised before, and ruled on by, the trial court ... [and is] sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds therefor.” § 924.051(1)(b), Fla. Stat. (2002).
Based on our review of the record, we conclude that Corona has met both the statutory and case law requirements for preservation. Although we recognize that an objection to an out-of-court statement as inadmissible hearsay will not preserve the Crawford issue, Williams v. State, 967 So.2d 735, 748 n. 11 (Fla.2007) (citing Schoenwetter v. State, 931 So.2d 857, 871 (Fla.2006)), we do not interpret our precedent as imposing a requirement that a defendant intone special “magic words” in order to preserve this constitutional claim. See, e.g., Murray v. State, 3 So.3d 1108, 1117 (Fla.2009) (“While no magic words are needed to make a proper objection, the articulated concern must be ‘sufficiently specific to inform the court of the perceived error.’ ”) (quoting State v. Stephenson, 973 So.2d 1259, 1262 (Fla. 5th DCA 2008)); see also Evans v. State, 838 So.2d 1090, 1097 n. 5 (Fla.2002) (holding that failure to specifically assert a Sixth Amendment challenge will not preclude appellate review where the hearsay objection “is closely related to the right of confrontation”). Rather, as denoted in our statutes, an issue is preserved where it is timely raised and ruled on and apprises the court of the relief sought and the basis for that relief. The record in this case demonstrates that the trial court was well aware of the nature of the objections when it overruled the objections on the basis of its prior rulings concerning A.C.’s state *1243 ments. Importantly, the court’s prior ruling concerning the exclusion of A.C.’s statements was based in part on the court’s rejection of Corona’s confrontation argument. Thus, it is clear to this Court that Corona’s later hearsay objection “fairly apprised the trial court of the relief sought and the grounds therefor.” § 924.051(1)(b), Fla. Stat. (2002). In light of the unique facts in this case, we conclude that Corona’s confrontation violation was preserved and is subject to harmless error review.

Harmless Error Analysis

In conducting our harmless error analysis, this Court must determine whether “there is a reasonable possibility that the error affected the verdict.” State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986). The burden rests on the State to demonstrate that the error was harmless. Id. A proper analysis requires “an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.” Id. at 1135.
In this case, it is clear that harmful error occurred. An examination of the wrongly admitted testimony reveals that the statements made by A.C. were among the most significant pieces of evidence introduced by the State, particularly in light of the fact that there was no physical evidence of the sexual battery. In its opening statement, the State told the jury that they would hear testimony that A.C. told police her father had put his mouth on her vagina. During trial, Deputy Avilas gave a detailed description of what the child victim told her. During its closing argument, the State agreed that the jury could either believe the statements of A.C. and her mother and the statements Corona made when he was arrested, or believe Corona’s testimony at trial. The State reminded the jury that A.C. told the investigator that Corona had placed his mouth on her vagina. The argument made repeated references to the “words” of A.C. that were elicited through testimony. In its final statement, the State commented in part, “Remember what [A.C.] said. You have her words.” It is clear that A.C.’s statements were extremely influential evidence. Therefore, we conclude that the error of admitting the -victim’s statements affected the verdict in this trial.
The degree of error in this case is even more apparent when considering the fact that without the statements from A.C., the testimony concerning Corona’s statements and subsequent confession should also have been excluded from trial pursuant to the legal principle of corpus delicti. In State v. Allen, 335 So.2d 823 (Fla.1976), this Court described the corpus delicti rule as follows:
It is a fundamental principle of law that no person be adjudged guilty of a crime until the state has shown that a crime has been committed. The state therefore must show that a harm has been suffered of the type contemplated by the charges (for example, a death in the case of a murder charge or a loss of property in the case of a theft charge), and that such harm was incurred due to the criminal agency of another. This usually requires the identity of the victim of the crime. A person’s confession to a crime is not sufficient evidence of a criminal act where no independent direct or circumstantial evidence exists to substantiate the occurrence of a crime. The judicial quest for truth requires that no person be convicted out of derangement, mistake or official fabrication.
*1244 Id. at 825 (footnote omitted) (emphasis added). Under this rule, the State is required to present evidence that a crime occurred and evidence establishing each element of the crime before the defendant’s confession can be admitted. Bradley v. State, 918 So.2d 337, 339 (Fla. 1st DCA 2005).
Corona was charged under section 794.011(2), Florida Statutes (2000). Section 794.011(2)(a) provides that “[a] person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony, punishable as provided in ss. 775.082 and 921.141.” Sexual battery is defined by the statute as “oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object,” but not any act done for a bona fide medical purpose. § 794.011(1)(h), Fla. Stat. (2002). Therefore, the State was required to present sufficient evidence that (1) Corona was at least eighteen years of age, (2) A.C. was less than twelve years of age, and (3) Corona committed oral sexual battery on A.C.
Notably, in this case, Deputy Avi-las’s testimony concerning A.C.’s statements was the only evidence of the penetration/union element of the capital sexual battery charge. Because we conclude that the victim’s statements should have been excluded from trial, it is clear that the remaining permissible evidence could not establish a prima facie case of the crime as charged. Thus, Corona’s statements or confession could not be properly admitted into evidence under the corpus delicti rule. See Burks v. State, 613 So.2d 441, 444 (Fla.1993) (“The corpus delicti cannot be proven solely by a confession or admission.”) (quoting Deiterle v. State, 101 Fla. 79, 134 So. 42, 43 (1931)); Snell v. State, 939 So.2d 1175, 1178 (Fla. 4th DCA 2006) (“Ordinarily, proof of the corpus delicti of the crime charged is required before a confession or admission against interest may be received in evidence.”) (quoting Garmon v. State, 772 So.2d 43, 46 (Fla. 4th DCA 2000)).[7]
Thus, in this case, harmful error occurred not only because of the erroneous admission of A.C.’s statements, but also because of the erroneous admission of Corona’s statements and confession. During its opening statements, the State explained to the jury that they would hear testimony that Corona stated “I can’t believe I did that to my daughter” and confessed to the crime. At trial, Corona’s confession was described through the testimony of Officer Maikowski and Trooper Ewald. Moreover, the State heavily relied on Corona’s confession, noting that it corroborated A.C.’s statements. During its closing, the State commented that Corona’s confession was “very consistent” with A.C.’s statements. Finally, in addition to commenting on the victim’s statements and Victoria’s statements, the State remarked, “|Y]ou have the defendant’s confession. He admitted to doing this. Find him guilty because he is guilty.” The record demonstrates that the impermissible evidence of *1245 A.C.’s statements, together with Corona’s statements, was the lynchpin in the State’s case. Because this evidence should have been excluded and there was minimal additional evidence on which to convict Corona, we cannot say beyond a reasonable doubt that the error of admitting A.C.’s statements and Corona’s statements did not affect the verdict. Thus, harmful error occurred in this case and Corona is entitled to a new trial.

CONCLUSION

In light of the above, we quash the decision of the Fifth District and remand to the district court with directions to vacate Corona’s conviction and sentence and order a new trial. See Pacheco v. State, 698 So.2d 593, 596 (Fla. 2d DCA 1997) (quoting Lockhart v. Nelson, 488 U.S. 33, 40, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)) (“[R]etrial is permitted when ‘a reviewing court determines that a defendant’s conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction.... ’ ”).
It is so ordered.
PARIENTE, LEWIS, LABARGA, and PERRY, JJ., concur.
POLSTON, J., concurs in result.
CANADY, C. J., dissents with an opinion.

. Testimony supporting the State’s attempts was later presented at trial to the jury.

. Deputy Avilas understood this term to mean vagina.

. Maikowski testified that he also advised Corona of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In her subsequent testimony, Trooper Ewald testified that she also administered the Miranda warnings. During trial, Corona disputed the accounts of both officers and stated that he did not receive the Miranda warnings. However, the issue has not been raised on review before this Court.

.Although Maikowski used the phrase "genital area” and Ewald used the word “vagina," both officers admitted to paraphrasing the words used by Corona in his confession.

. The record in this case shows that Corona was thirty-six years old at the time of the offense.

. Our analysis to follow will focus on the statements made by the victim, A.C., although statements made by Victoria were also presented through the testimony of Avilas. The district court analyzed only the statements from A.C., stating that there was no testimony at trial concerning the incriminating statements made by Victoria. See Corona, 929 So.2d at 594, n. 5; but see Melendez-Diaz v. Massachusetts,- U.S. -, 129 S.Ct. 2527, 2533-34, 174 L.Ed.2d 314 (2009) (rejecting argument that forensic analysts were not subject to confrontation because they did not directly accuse the defendant of wrongdoing).
There was testimony at trial that Victoria urged an officer to "go get him, arrest him [Corona].” Even if we were to consider her statements as testimonial, the admissibility of the statements depends on the purpose for which they were admitted. On remand the trial court should keep in mind that "[t]he [Confrontation] Clause ... does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.” Crawford, 541 U.S. at 59 n. 9, 124 S.Ct. 1354 (citing Tennessee v. Street, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)). However, if the jury is asked to infer that Victoria’s statements prove that Corona committed the sexual battery, and Victoria is not available for cross-examination, "Confrontation Clause concerns [are] implicated.” Street, 471 U.S. at 414, 105 S.Ct. 2078.

. In addition to arguing that the admission of his statements violated corpus delicti, Corona argued that the trial court erred in denying his motion to suppress (1) his statements that were made after he was placed in the police vehicle in Chicago and (2) his later confession. Although Corona asserts that his police encounter in Chicago resulted in a Fourth Amendment violation and that his subsequent arrest was illegal, we disagree. Even if we were to agree that a seizure occurred, it was not unreasonable in this case for the police to isolate Corona for his own protection. Moreover, we conclude that his later arrest was lawful.