STEVENSON, Judge.
Appellants, Nestor Ramos and Jose Ortiz, were tried by jury and both convicted of one count of trafficking in cocaine and one count of conspiracy to traffic in over 400 grams of cocaine. We affirm the conviction of Ortiz but reverse that of Ramos.
At trial, Ramos did not dispute that he had engaged in the sale of cocaine to Detective Dan Losey but defended his conduct by arguing that he had been entrapped by a professional confidential informant, Christopher Gambino. Ramos took the stand in his own defense and testified that he and Gambino worked together, were friends and socialized together. Ramos stated that Gambino would ask him every day to find someone who had drugs. Ramos testified that about a week before the arrest, Gambino told him that Gambino’s child had been kidnapped by the Gambino crime family in New York (apparently no relation), and he (Gambino) had to come up with a lot of money to free him. In order to get the money, Gambino wanted Ramos to help him buy and sell drugs. When Ramos refused, Gambino persisted. Gambino went to work three days later almost crying, and pleaded with Ramos to help him find the kilos needed to free his son. Finally, according to Ramos, his resistance wore thin and he agreed to help.
The defense called John Orosco, the supervisor of both Ramos and Gambino in their job at the Palm Beach Sanitation Department. Orosco testified that Gambino had *1003 also approached him, to try to get him involved in a drug transaction. The defense attempted to introduce testimony from Oros-co that he had (1) overheard the conversations between Gambino and Ramos where Gambino implored Ramos to become involved with the drug transaction and (2) he had also overheard Gambino’s “pitch” to other employees to try to get them to participate in drug deals and (3) Gambino had attempted to persuade him to become involved in a drug transaction using the same story about his child being kidnapped in New York as Gam-bino had used with Ramos. The trial court excluded all of this testimony on the state’s hearsay objections and allowed only the testimony that Gambino approached Orosco about getting someone to buy drugs from Gambino or sell them to him. We agree with appellant that this was error.
Orosco’s proffered testimony was not hearsay, inasmuch as it is clear from the record that the testimony was not offered to prove the truth of the matter asserted — that Gambino’s child had been kidnapped and that Gambino needed the money to free him — but was offered to prove the common scheme of the informant and to corroborate Ramos’ testimony concerning the methods used. See 4 Weinstein, Evidence § 801(c)[01]; McCrae v. State, 395 So.2d 1145 (Fla.1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981). We cannot find the exclusion of this testimony harmless in this case. See Huff v. State, 544 So.2d 1143 (Fla. 4th DCA 1989); Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). This testimony was crucial to Ramos’ defense of entrapment.
The jury should have had the benefit of hearing Orosco’s corroborative testimony to show the methods of persuasion employed by Gambino. The absence of this testimony becomes all the more important to the defense when it is considered that the confidential informant did not testify at trial. Further, the testimony would have undermined the arresting officer’s testimony that Ramos had told him that it was Ramos who had approached Gambino in search of a drug deal, contrary to Ramos’ own testimony at trial. Orosco’s testimony would have been extremely relevant to the issue of whether the informant caused appellant to engage in illegal conduct by employing methods of persuasion which created a substantial risk that the crime would be committed by a person other than one who was ready to commit it. See § 777.201, Fla.Stat. (1993).
The state argues that any error was harmless in relation to the entrapment defense because there was evidence that Ramos had previously been arrested on drug charges, he apparently had a number of acquaintances who could obtain drugs, and he appeared easily familiar with drug culture lingo. We reject this argument. Despite Ramos’ past connection to the drug world, the jury still could have believed that Ramos was not predisposed to commit this particular crime. Thus, as we are unable to say beyond a reasonable doubt that the exclusion of this testimony did not contribute to the jury’s verdict, the error cannot be considered harmless and a new trial is in order. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
We have considered the other issues raised by Ramos and find that they are either moot or lack merit. Although not given in this case, on retrial, the trial court certainly will be expected to give the entrapment instruction mandated by Munoz v. State, 629 So.2d 90 (Fla.1993).
We have considered the issues raised by Ortiz and find that no reversible error has been shown. See State v. Hunter, 586 So.2d 319 (Fla.1991).
Accordingly, we reverse the conviction and sentence of Ramos and affirm those of Ortiz.
STONE and FARMER, JJ., concur.