POLEN, J.
We reverse the defendant’s conviction and sentence for delivery of cocaine because we find that the trial court erred in the following: (1) by sustaining the State’s hearsay objection to testimony that was admissible non-hearsay; (2) by sustaining the State’s relevancy objection to testimony of LeBron’s work history, which was being offered to demonstrate the defendant’s lack of predisposition to commit the crime charged; (3) by refusing to instruct the jury that the State had to prove delivery to the detective, as was specifically alleged in the information; and (4) improperly initiating a plea dialogue. We are not persuaded by the defendant’s other argu *600 ments on appeal.[1]
I. Factual Background
The State charged LeBron with delivery of cocaine, specifically alleging delivery to the undercover detective who was in the car with the confidential informant and LeBron during the transaction at issue. LeBron’s defense was that (1) he was entrapped by the informant, and (2) he delivered the cocaine to the informant, and not to the detective as was alleged in the information.
Before the start of the trial, the court initiated the following discussion:
THE COURT: State, have you made a plea offer in this case?
[[Image here]]
THE STATE: No, I haven’t made an offer just with this case.
THE COURT: Where does he score?
THE STATE: He scores 48.9 points combined but that is on both cases. The score sheet is prepared with both open cases.
THE COURT: Okay. [Defense Counsel], is your client interested in entering in any type of plea in this case here today?
DEFENSE COUNSEL: No. But just out of curiosity, that is a combined score, does he score under 44 on the one delivery case?
THE STATE: He would.
DEFENSE COUNSEL: So was there, just for the record, for no other reason, an offer based on that individual score?
THE STATE: No. Both combined.
THE COURT: I can’t force them to make an offer, [Counsel].
What I can tell you is if your client pled today on this case, I would be inclined to give him probation, if that is where he scores on the delivery of cocaine case.
I would have to look at the facts, but that would be where I would go. But I can’t make him any promises to what would happen with the next case.
DEFENSE COUNSEL: Understood.
[[Image here]]
THE COURT: 14.85 months Florida State Prison. That is the bottom of the guidelines on the delivery case?
Mr. LeBron, do you want that? Do you want the bottom of the guidelines because if you do I will give you the bottom of the guidelines right now.
MR. LEBRON: Bottom of the guidelines is?
THE COURT: 14.8 months.
MR. LEBRON: I would have to talk to my attorney.
THE COURT: Well, now is the time. If you want the bottom of the guidelines, you can have it now,„ otherwise we are going forward.
DEFENSE COUNSEL: I don’t recommend it.
MR. LEBRON: No.
THE COURT: All right. It is your decision to make, Mr. LeBron. I am not trying to twist your arm.
The case then proceeded to trial.
The undercover detective testified that the informant had a pending charge, and when the informant was arrested, he named two targets: LeBron and a juvenile. The informant called LeBron and arranged for a deal with LeBron about a week and a half before November. Le- *601 Bron agreed to the deal, but did not show up; so nothing happened at that time.
On November 30, the detective was undercover as a passenger of a car driven by the informant. LeBron pulled up next to them and got into the backseat behind the informant. The detective testified that LeBron dropped a baggy of cocaine over the armrest and it landed in the detective’s lap.
After the State rested, LeBron testified on his own behalf. He said that he worked for a bank for the last three years. Seven years before this trial, while in high school, he lived with his father who had a drug problem. During this time period, LeBron was arrested multiple times. As a result, he had nine felony convictions. After Le-Bron’s stepfather entered his life, LeBron got a job with an alarm company and then went to work in banking.
When LeBron said he had been working for the last five years, the State made a relevancy objection. Defense counsel argued that LeBron’s work history went to the issue of predisposition for his entrapment defense, but the court sustained the objection.
LeBron testified that he met the informant four years prior, and the two became acquaintances. They became close, and the informant started asking if LeBron could get him cocaine. LeBron testified that he was trying to leave that lifestyle and did not want to get in any more trouble. The informant, nonetheless, kept pursuing this for months.
LeBron testified that the informant knew LeBron was going through a tough financial situation, and that the informant kept telling him “well, wouldn’t this help you out with the move, wouldn’t this help you out with your financial situation.” Le-Bron testified that the informant requested drugs repeatedly and LeBron always said no. LeBron said he eventually succumbed to the pressure and arranged for a meeting. LeBron added that he did not show up to the meeting, however, because it was not something he wanted to do. After missing this initial meeting, LeBron said that the informant continued to call him.
When defense counsel began to question LeBron about what the informant would say to him, the State made a hearsay objection. At side bar, defense counsel said that he should be allowed to “get it in with the [confidential informant] how much the confidential informant persuaded him.” Counsel continued: ‘Tour Honor, in all due respect how can I move forward on an entrapment defense if my client can’t testify to the actions and words and inducement of the confidential informant?” The court sustained the State’s objection and limited testimony to the conversations had on the day of the transaction and the week leading up to the transaction. The court allowed this limited testimony based on the rule of completeness, because the State had previously inquired into these conversations.
LeBron testified that he “eventually succumbed” to the pressure; and on November 30, he drove up and gave the baggie to the informant (not to the detective), and the informant then paid LeBron. LeBron stated that he was not given any money by the detective, and was not talking to her, even though she asked about money.
In closing argument, defense counsel relied primarily on the claim that LeBron was entrapped; but counsel also specifically argued to the jury that it had to acquit LeBron if the State did not prove that he delivered the cocaine to the detective, as was alleged in the information. The State objected that this argument was a misstatement of the law, and the court agreed.
*602 During deliberations, the jury sent a question to the court asking: “If it is determined that the alleged delivery was not to [the detective], must we return a not guilty verdict?” Over defense counsel’s objection, the court refused to instruct the jury that the State had to prove delivery to the detective as alleged in the information, and said it would simply read to the jury that the State had to prove a delivery. The court then instructed the jury:
To prove the crime of delivery of cocaine, the state must prove the following three elements beyond a reasonable doubt:
One, Daniel Peter LeBron delivered a certain substance. Two, the substance was cocaine. Three, Daniel Peter Le-Bron had knowledge of the presence of the substance. Deliver or delivery means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship.
LeBron was subsequently convicted of the crimes charged and sentenced to fifteen months in prison followed by two years of community control, followed by three years of probation with no early termination.
II. Analysis
We find that the trial court erred in the following: (1) y sustaining the State’s hearsay objection to testimony that was admissible non-hearsay; (2) by sustaining the State’s relevancy objection to testimony of LeBron’s work history, which was being offered to demonstrate the defendant’s lack of predisposition; (3) by refusing to instruct the jury that the State had to prove delivery to the detective, as was specifically alleged in the information; and (4) improperly initiating a plea dialogue.
1.
We first note that the defendant’s claim that the trial court improperly sustained the State’s hearsay objection was preserved for appeal because defense counsel sufficiently stated a non-hearsay purpose for offering the testimony. An issue is properly preserved for appeal when “[the] issue, legal argument or objection to evidence ... is timely raised before, and ruled on by, the trial court, and is sufficiently precise that it fairly apprised the trial court of the relief sought and grounds therefor.” Corona v. State, 64 So.3d 1232, 1242 (Fla.2011) (quoting § 924.051(l)(b), Fla. Stat. (2002) (internal quotations omitted)). “[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.” Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982); accord Rodriguez v. State, 609 So.2d 493, 499 (Fla.1992). While “no magic words are needed [to preserve the error], the articulated concern must be ‘sufficiently specific to inform the court of the perceived error.’ ” Corona, 64 So.3d at 1242. “The purpose of this rule is to place the trial court on notice that an error may have been committed and therefore provide the trial court with an opportunity to rectify the error prior to any appellate review.” Fleitas v. State, 3 So.3d 351, 355 (Fla. 3d DCA 2008) (citing Chamberlain v. State, 881 So.2d 1087, 1100 (Fla.2004)).
In this case, the defendant contends that the arguments made side bar, specifically “I think I can get it in with the [confidential informant] how much the confidential informant persuaded him,” were sufficient to preserve this issue for appeal. We agree. Although defense counsel did not use any “magic word” while making his non-hearsay argument, defense counsel did proffér to the trial court that the state *603 ments were not going to be used for their truth (i.e., that LeBron actually had financial troubles), but instead were going to be used for the non-hearsay purpose of showing “how much the [confidential informant] persuaded [LeBron].” This satisfies the requirement that “the articulated concern ... be ‘sufficiently specific to inform the court of the perceived error.’ ” Corona, 64 So.3d at 1242; see also Harden v. State, 87 So.3d 1243, 1245 (Fla. 4th DCA 2012).
After reviewing the trial court’s ruling on the State’s hearsay objection, we also find the trial court erred in sustaining the State’s objection because the proffered testimony was not being offered for the truth of the matter asserted, but was offered only to show the persuasive effect that the statements had on LeBron.
Any testimony offered to show the state of the defendant’s mind, rather than offered to prove the truth of the matter asserted, is admissible as non-hearsay. Flynn v. State, 351 So.2d 377, 378 (Fla. 4th DCA 1977). In Flynn, the defendants were charged with delivery of cannabis, and they asserted the entrapment defense alleging that they “did what they did only to help out a troubled friend [who happened to be] the [police] informant.” Id. The trial court refused to allow testimony regarding a discussion had between a co-defendant and the police informant involved in setting up the delivery. Id. This court held that:
To disallow the Defendants to testify about the conversations, as they recalled them, was to remove the heart of their defense.... [T]he error was not in disallowing the informant’s testimony but in not permitting the Defendants to explain their motives and states of mind at the time of the alleged inducement. The testimony offered was not offered to prove the truth of the informant’s statements but to attempt to show the state of the Defendants’ minds.... We reverse and remand for a new trial because of this error.
Id. (citing Brown v. State, 299 So.2d 37 (Fla. 4th DCA 1974)).
In this case, the State objected to Le-Bron’s testimony about the conversations LeBron had with the confidential informant prior to November 30th. At sidebar, defense counsel stated that these statements were to be used to show “how much the confidential informant persuaded [Le-Bron].” These statements were not being offered for the truth of the matter(s) asserted by the informant, but were instead being offered to show their persuasive effect on LeBron. In accordance with Flynn, we hold that the court erred in sustaining the State’s hearsay objection. See Flynn, 351 So.2d at 378-79; see also Ortiz v. State, 654 So.2d 1002, 1003 (Fla. 4th DCA 1995) (“[The] testimony would have been extremely relevant to the issue of whether the informant caused appellant to engage in illegal conduct by employing methods of persuasion which created a substantial risk that the crime would be committed by a person other than one who was ready to commit it.”). Based on the foregoing, the case is reversed and remanded for a new trial as to this issue.
2.
The trial court erred in sustaining the State’s relevancy objection to testimony regarding LeBron’s work history because said testimony was relevant to his entrapment defense. Relevant evidence “is evidence tending to prove or disprove a material fact.” § 90.401, Fla. Stat. (2008). More specifically, evidence “tending] to show ... the defendant’s lack of predisposition tis] ... relevant to [a] defense of entrapment.” Cotton v. State, 763 So.2d 437, 440 (Fla. 4th DCA 2000). And most important to this case, evidence that a *604 defendant “was steadily employed in an honest job” is relevant when considering a defendant’s lack of predisposition. United States v. Rodriguez, 858 F.2d 809, 816 (1st Cir.1988).
In this case, defense counsel asked Le-Bron about his work history during the last five years. The State objected, and the following argument was made at side bar:
THE COURT: Explain how work history goes to dispossession [sic]?
DEFENSE COUNSEL: Criminal history is consistent with unemployment. At the time he had no means of income so he might have been — he was conducting himself to support the habit. For the last five years, he has remained arrest free. He was working diligently and has shown a dramatic change in lifestyle and less of a predisposition to commit a crime.
THE COURT: I don’t find it is relevant to—
DEFENSE COUNSEL: I will move on, anyway, so.
Because LeBron asserted an entrapment defense in this case, evidence of his steady work history over a period of five years at least tends to show the defendant’s lack of predisposition. See Rodriguez, 858 F.2d at 816 (considering evidence that the defendant “was steadily employed in an honest job”). The State is certainly free to argue that little weight should be given to LeBron’s steady employment during that five-year period, especially in light of his lengthy criminal record. The defense, however, should not be prohibited from arguing that LeBron was no longer predisposed to commit crime because “for the last five years [LeBron] has remained arrest free [and] was working diligently and has shown a dramatic change in life style and less of a predisposition to commit crime”; which was counsel’s relevancy argument made to the trial court.
Holding that such evidence is not relevant to an entrapment defense would create a situation where defendants with criminal records would not be allowed to demonstrate that they have been successfully rehabilitated and are no longer predisposed to commit crime — a “once predisposed, always predisposed” scenario. Contra Ortiz, 654 So.2d at 1003 (“Despite [the Defendant’s] past connection to the drug world, the jury still could have believed that [the Defendant] was not predisposed to commit this particular crime.”). The trial court, therefore, abused its discretion by ruling that LeBron’s work history was not relevant to his claim of entrapment; specifically, such evidence has a tendency to prove LeBron’s lack of predisposition to commit the crime charged.
This error was not harmless. See Hughes v. State, 36 So.3d 816, 817 (Fla. 1st DCA 2010). Like the defendant in Hughes, LeBron had one main theory of defense: entrapment relying on the proposition that — despite his past criminal history — he was no longer predisposed to commit crime. Therefore, the State cannot prove beyond a reasonable doubt that the exclusion of this testimony “had no effect on the jury’s verdict despite the fact that the jury heard testimony about some of [LeBron’s work history].” See id. Accordingly, we reverse and remand for a new trial based on this issue.
3.
The trial court erred in refusing to instruct the jury that the State had to prove delivery to the undercover detective, as was specifically alleged in the information. “When a trial court denies a defendant’s request for a special instruction, the defendant has the burden of showing on appeal that the trial court *605 abused its discretion in giving the standard instruction.” Brickley v. State, 12 So.3d 311, 313 (Fla. 4th DCA 2009). The failure to give a requested jury instruction is an error if “(1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing.” Id.
LeBron relies on State v. Shaw, 415 So.2d 93 (Fla. 4th DCA 1982), to support his contention that the jury instruction should have required the State prove that the cocaine was actually delivered to the undercover detective, as was alleged in the information. We agree.
In Shaw, the defendant was charged by information with the delivery of metha-qualone to Detective David Ecklund. At trial, the State proved that the methaqual-one was actually delivered to Officer Robert Gren. Alleging that the variance between the offense charged and proved was material, the defendant moved for a judgment of acquittal at the conclusion of her defense, which was granted. The State then filed a second information, charging the defendant with delivery to Officer Gren. The defendant filed a motion to dismiss the second information, arguing double jeopardy, and that motion was granted. On appeal, this court reversed the dismissal of the second information because “quite clearly, the facts as alleged in the second information — that appellee had delivered methaqualone to Officer Gren — would not have supported a conviction of the offense charged in the first information — that [the defendant] had delivered methaqualone to Detective Ecklund.” Id. at 93-94.
The Florida Supreme Court similarly notes that:
The general rule is where an offense may be committed in various ways, the evidence must establish it to have been committed in the manner charged in the indictment.... The indictment or information may ... allege[ ] them in the conjunctive and proof of one [will suffice] but if [only] one of the state of facts is alleged, it cannot be established by proof of the other.
Long v. State, 92 So.2d 259, 260 (Fla.1957).
In this case, the charging document alleged that LeBron “did unlawfully deliver to [the undercover detective] a controlled substance.” A part of the defendant’s theory of defense, which was argued at closing, was that the cocaine was delivered to the confidential informant, and not to the undercover detective as was alleged in the information. During its deliberations, the jury even sent a question to the court asking, “[i]f it is determined that the alleged delivery was not to [the undercover detective], must we return a verdict of not guilty?”
At that point, defense counsel requested the judge to instruct the jury that “the state’s burden is to prove the allegations in the charging document,” to which the court replied “that is not the law.” The court then recalled the jury and instructed thé jurors that “[d]eliver or delivery means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship.”
The trial court’s failure to give the requested jury instruction in this case cannot escape the law of this jurisdiction, specifically Shaw and Long. If, as in Shaw, “the facts as alleged in [one] information — that [the defendant] had delivered [a controlled substance] to [a specific person] — would not have supported a conviction of the offense charged in [a separate] information — [alleging] that [the defendant] had delivered [the controlled substance] to [a different person],” then the facts alleged in *606 the information in this case — that LeBron delivered cocaine to the undercover detective — cannot support a conviction if the jury finds that he delivered the cocaine to a different person. See Shaw, 415 So.2d at 94 (emphasis added). Further, and like Long, because delivery “may be committed in various ways, the evidence must establish it to have been committed in the manner charged in the indictment [or information].” Long, 92 So.2d at 260. In this case, the State’s “information may have alleged [delivery] in the conjunctive and proof of [delivery to] one would have sufficed[,] but [the State only alleged] one of the state of facts ..., [and the offense] cannot be established by proof of the other.” Id.
Accordingly, the defendant’s request for a special jury instruction should have been granted because (1) the special instruction was supported by evidence that delivery was actually made to someone other than the undercover detective; (2) the standard instruction did not adequately cover the defense’s theory that delivery was not made to the detective, as was alleged in the information; and (3) the special instruction was in accordance with the law of this state, specifically Shaw and Long. See Brickley, 12 So.3d at 313. Therefore, the trial court erred in denying the special instruction and the case should be reversed and remanded for a new trial. On remand, the State is free to amend its information to allege delivery to either the informant, the detective, or both.
4.
The sentence violates due process under Wilson v. State, 845 So.2d 142 (Fla.2003). A trial court “must not initiate a plea dialogue; rather at its discretion, it may (but is not required to) participate in such discussions upon request of a party.” State v. McMahon, 47 So.3d 368, 369 (Fla. 4th DCA 2010), aff'd, 94 So.3d 468 (Fla. 2012) (quoting State v. Warner, 762 So.2d 507, 513 (Fla.2000) (emphasis added)). The other factors that should be considered in determining whether a sentence was the result of judicial vindictiveness include but are not limited to:
(1) [W]hether the trial judge initiated the plea discussions with the defendant in violation of Warner; (2) whether the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (3) the disparity between the plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.
Wilson, 845 So.2d at 156 (footnotes omitted). The Wilson court further stated that “[a]s regards factors (1) and (2) ... these actions alone may give rise to a presumption of judicial vindictiveness that would shift the burden to the State to produce affirmative evidence on the record to dispel the presumption.” Id.
In this case the first Wilson factor is met because the trial court did initiate plea discussions by stating “7 can’t force [the State] to make an offer. ... What I can tell you is if your client pled today on this case, I would be inclined to give him probation, if that is where he scores on the delivery of cocaine case[;]” and also by stating, “Do you want the bottom of the guidelines, because if you do 7 will give you the bottom of the guidelines right now.” The second Wilson factor is met because the trial judge implied that Le-Bron would receive a harsher sentence by *607 going to trial instead of accepting the minimum sentence when it was offered.[2]
Even if the third and fourth Wilson factors are not satisfied, the foregoing is sufficient to give rise to a presumption of vindictiveness. Wilson, 845 So.2d at 156. We hold that, while LeBron’s sentence may not have actually been the product of vindictiveness, it was nonetheless improper for the trial court to initiate a plea dialogue with the defendant, especially one during which the court implied that the defendant would possibly be subject to a harsher sentence by refusing to accept the court’s plea offer. Therefore, we hold that the trial court violated LeBron’s due process rights according to Wilson. See id. On remand, this case should be reassigned to a new judge in order to remove any presumption of vindictiveness.
III. Conclusion
Based on the foregoing, this case is reversed and remanded for a new trial in accordance with this opinion. The case shall be reassigned to a different judge on remand. We are not persuaded by Le-Bron’s other arguments on appeal.

Reversed and Remanded for a New Trial.

STEVENSON, J., and BONAVITA, AUGUST, Associate Judge, concur.

. One of LeBron’s other arguments on appeal was that the statutory scheme under which he was convicted is unconstitutional. The Florida Supreme Court recently held, however, that Chapter 893 of the Florida Statutes is constitutional on its face. State v. Adkins, 96 So.3d 412 (Fla.2012).

. The trial judge told LeBron: "If you want the bottom of the guidelines, you can have it now, otherwise we áre going forward."