922 So.2d 1065 (2006)
Charles BARTEE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-2534.
District Court of Appeal of Florida, Fifth District.
March 17, 2006.
*1066 James S. Purdy, Public Defender, and Meghan Ann Collins, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
The appellant, Charles Bartee, appeals the judgment and sentence meted out to him as a result of his conviction of burglary, false imprisonment and battery of his former girlfriend, Charisma Mitchell.[1] Mr. Bartee asserts that the trial court erred by admitting into evidence the tapes of certain 911 calls, as well as the testimony of a police officer concerning certain statements of Ms. Mitchell made to the officer in light of the opinion of the United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We conclude that Mr. Bartee is correct with respect to the statements of Ms. Mitchell to the police officer, and reverse, in part, as a result.
Mr. Bartee and Ms. Mitchell, who were at one point romantically involved, got into a rather serious altercation. The evidence indicates that on the day in question Mr. Bartee forced his way into Ms. Mitchell's apartment for reasons that are disputed, hit Ms. Mitchell, and threatened to injure *1067 her son. Ms. Mitchell did not testify at the trial, and appears not to have been available to testify. Instead, the State used 911 calls, a statement by Ms. Mitchell to a law enforcement officer, and the testimony of several witnesses to prove its case.
Four 911 calls were offered into evidence by the State based on two exceptions to the hearsay rule. The first call, which was made by Ms. Mitchell as the incident occurred, was admitted pursuant to section 90.803(2), Florida Statutes (2004), the excited utterance exception to the hearsay rule. The second and third calls, placed at the time of the incident by a neighbor of Ms. Mitchell, were admitted under section 90.803(1), Florida Statutes (2004), the spontaneous statements exception to the hearsay rule. The court admitted the final call, in which both Ms. Mitchell and her neighbor relayed information to the police after the incident concluded, as a spontaneous statement.
The court also admitted in evidence the testimony of one of the officers from the Orlando Police Department who had responded to the 911 calls. The officer said she arrived at Ms. Mitchell's apartment about five minutes after she was dispatched. When she got to the apartment, she spoke to the victim who according to the officer appeared to be upset and excited and had visible scratches and a bruise on her body. She was not, however, crying, nor was she bleeding. Based on this foundation the trial court received the testimony as an excited utterance.
Over Mr. Bartee's hearsay objection, the police officer testified that Ms. Mitchell told her that when she arrived at her apartment with her son on the morning of the incident, she found Mr. Bartee in the bathroom. Ms. Mitchell told the officer that she was startled by his presence, because although they had been living together, they had since broken up. Ms. Mitchell ran to her mother's nearby apartment to call the police, leaving her son behind. The officer testified that Ms. Mitchell told her that she stood in front of her mother's apartment and watched as Mr. Bartee picked up her son, and threatened to snap his neck if she called the police. Eventually, Mr. Bartee returned to the apartment and locked the door. Mr. Bartee later let the child go unharmed, and left the apartment.
Ms. Mitchell told the officer that she then ran back into the apartment with her child and closed and locked the door. Mr. Bartee subsequently tried to reenter by using a key to the apartment. Ms. Mitchell said in her statement that she did not know that Mr. Bartee had a key. She then told the officer that she barricaded the door, but that Mr. Bartee removed the front window pane and entered the apartment a second time through the window. Ms. Mitchell said that once inside, Mr. Bartee punched, hit, choked and threatened her.
Mr. Bartee moved for mistrial, arguing that Ms. Mitchell's statements could not be classified as excited utterances, and that there had been no showing that the evidence was reliable. Defense counsel did not immediately address an implication of the Confrontation Clause. The trial court denied the motion for mistrial, stating that after listening to the tapes and reviewing its notes, it concluded that "the victim was under the stress of some event that had just occurred to her."
Another police officer then testified that she had spoken with Mr. Bartee on the night of the incident, and that his statement was markedly inconsistent with Ms. Mitchell's. At this point Mr. Bartee brought to the court's attention by objection that the admission of the statements taken by the police officer from Ms. Mitchell *1068 was in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. His objection, however, was overruled.
The police officer continued that Mr. Bartee told her that as he entered the apartment through the window, Ms. Mitchell kicked him in the face, but that he did not blame her for doing so. He told the officer that he had lived with Ms. Mitchell for the two weeks prior to the incident, but later said that he had been staying with two of his cousins. He asserted, however, that the apartment had been his apartment. Finally, Mr. Bartee confirmed that Ms. Mitchell was upset that he was in the apartment, and had fled, but later returned and locked him out of the apartment. Mr. Bartee told the officer that he only came through the window because he wanted to get his belongings from inside.
Mr. Bartee later renewed his motion for mistrial on confrontation grounds, arguing that the trial court had erroneously admitted the statements of Ms. Mitchell into evidence, particularly because he had been denied the opportunity to cross-examine her. Mr. Bartee noted that the State had not been able to produce Ms. Mitchell, and indicated that his investigators had, likewise, not been able to locate her.
After the motion was again denied, three other eyewitnesses testified for the State. One of the eyewitnesses was the property manager for the apartment complex, while the others were acquaintances of the victim. One acquaintance and the property manager testified that they saw Mr. Bartee choking Ms. Mitchell. All three witnesses stated that they heard Ms. Mitchell telling Mr. Bartee to stop. The property manager specifically said that when she asked Mr. Bartee to stop, he responded by dragging Ms. Mitchell into the bathroom. The property manager testified that she tried to use her key to open the door, but because the door was jammed, she and the other two witnesses could only look into the apartment through the broken window. Two of the witnesses said they saw a gun within arm's reach of Mr. Bartee, and testified that he exited the apartment by jumping out of the open window. Each woman witnessed Mr. Bartee running from the apartment and throwing something into the bushes as he fled. The apartment manager said she saw Mr. Bartee pick a gun up before he exited the apartment. Finally, the three witnesses testified that after Mr. Bartee fled, Ms. Mitchell was in tears, her lip was injured, her face was swollen, and she had scratches or marks on her neck and face. The three women were present when Ms. Mitchell and her neighbor were on the phone with the police after the incident.
After the State rested Mr. Bartee's cousin, who testified for the defense, told the jury that Mr. Bartee and Ms. Mitchell had been in a relationship for three or four years, and that during that time Mr. Bartee sometimes lived with Ms. Mitchell. He said further that Mr. Bartee was living with Ms. Mitchell at the time of the incident, and that Mr. Bartee had asked him to help him move some of his things from the apartment. The cousin identified furniture from Ms. Mitchell's apartment that belonged to Mr. Bartee and testified that Mr. Bartee also kept a television and some clothes in the apartment.
Finally, Mr. Bartee, testifying on his own behalf, said that he and Ms. Mitchell had dated for three years, and that he had moved into her apartment several months before the incident. He said he brought furniture to the apartment, helped pay the rent, and had a key that Ms. Mitchell had given him. His view of the altercation was substantially different from Ms. Mitchell's. He basically said that he wanted to get some of his own belongings from the *1069 apartment, and that when he entered, Ms. Mitchell berated him, hit him and swore at him. He admitted that he pushed and slapped her after she attacked him, but said he never choked her or hit her with a closed fist. Finally, he claimed that the witnesses mistook his keys that were on the end of a long strap for a firearm.
The jury convicted Mr. Bartee of burglary of a dwelling, false imprisonment of Ms. Mitchell, and battery, but did not find that Mr. Bartee used a gun in the commission of these crimes. Mr. Bartee's motion for a new trial based on the violation of his Sixth Amendment confrontation rights was denied. After sentencing, this appeal followed.
In Crawford, the United States Supreme Court held that the admission of testimonial hearsay statements against an accused person violates the Sixth Amendment right of confrontation, if the declarant is unavailable to testify at trial and the accused had no prior opportunity to cross-examine the witness. See Herrera-Vega v. State, 888 So.2d 66, 68 (Fla. 5th DCA 2004), review denied, 902 So.2d 790 (Fla. 2005). Although the Crawford majority did not define "testimonial" in a comprehensive fashion, it did say that testimonial evidence includes:
1. Ex parte in-court testimony or its functional equivalent  that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarant would reasonably expect to be used prosecutorially;
2. Extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;
3. Statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
See Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354. The court also indicated that statements taken by police officers in the course of an interrogation are also considered testimonial, though they are not sworn testimony.[2]Id. at 52, 124 S.Ct. 1354. The court concluded that:
Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law  as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.
Crawford, 541 U.S. at 68, 124 S.Ct. 1354.
Since Crawford, state and federal courts have been struggling to find the line between testimonial and nontestimonial statements in order to determine when to apply the Crawford holding. In the present case we are confronted with two different iterations of the issue. We must first determine whether the trial court properly *1070 admitted the 911 calls, and then turn our attention to the admission of the police interview of the now-absent victim.
We do not address the preservation of error problem that is evident in the argument concerning the 911 tapes, because in our view where the calls, such as those in the present case, bear the hallmarks of excited utterances or spontaneous statements, and are admitted into evidence under those exceptions to the hearsay rule, the statements are not necessarily testimonial in nature. See Williams v. State, 909 So.2d 599 (Fla. 5th DCA), review denied, 919 So.2d 437 (Fla. 2005); Towbridge v. State, 898 So.2d 1205 (Fla. 3d DCA 2005); Herrera-Vega. See also U.S. v. Todd, 2005 WL 2673506 (11th Cir. Oct.20, 2005). The statements here, for example, were not made in response to police interrogation, and do not seem to fit any of the three categories set out in Crawford. The trial judge considered the evidence and determined that the tapes were admissible by virtue of their falling within these exceptions to the hearsay rule. As we find no clear abuse of discretion in the admission of this evidence, and no violation of the confrontation rights of the accused, we conclude under the facts of the present case that the trial court committed no error in this regard.
We view the admission of statements made by the unavailable victim to a police officer in response to questioning by the officer differently, however. Initially we conclude that Mr. Bartee sufficiently preserved his constitution-based objection to this testimony. Substantively we agree that his confrontation rights were compromised by the admission of the statements to the officer.
Ms. Mitchell's statements were admitted under the excited utterance exception to the hearsay rule. The statements, however, were made well after Mr. Bartee had left the scene, at least five minutes after the officer was dispatched following the final 911 call, and in direct response to police questioning. Ms. Mitchell was "upset," according to the police officer, but was not crying or shaking. The questioning was carried out by a police officer who was investigating the crimes being reported by Ms. Mitchell and gathering facts about the incident. A reasonable person would certainly have been aware that the statements in response to the police officer would be available for later use in prosecuting the accused. Thus, while the utterances here might have been excited, it appears that they were testimonial in character, as well.
A close analog to this case is found in Lopez v. State, 888 So.2d 693 (Fla. 1st DCA 2004). There, statements were made by a victim of a kidnapping to police officers who responded to a 911 call made from an apartment complex. The statements were made at the scene in direct response to officer questioning, and the declarant accused the defendant of the crime. Though the declarant was excited when the statement was given, the First District Court of Appeal rejected the position that excited utterances should automatically be excluded from classification as testimonial statements. Our sister court reasoned that although initial police questioning may not have been what the Crawford court contemplated as an "interrogation,"
a startled person who identifies a suspect in a statement made to a police officer at the scene of a crime surely knows that the statement is a form of accusation that will be used against a suspect. In this situation, the statement *1071 does not lose its character as a testimonial statement merely because the declarant was excited at the time it was made.
Id. at 699-700.[3]
Having concluded that the statements of Ms. Mitchell were testimonial, we must next examine whether the declarant was unavailable at the time of trial, and whether Mr. Bartee had an opportunity to cross-examine her. This sub-issue is not difficult under the facts presented by this case. There appears to be no contention that Ms. Mitchell was available for cross-examination pretrial, and neither party was able to produce her for trial.
Since the hearsay statements of Ms. Mitchell to the police officer were testimonial, and since she was clearly unavailable, the statements should have been excluded from evidence under Crawford. The State argues, however, that even if the statements were improperly admitted into evidence, the error was harmless. The State is only partially correct.
In order to determine whether a trial court error is harmless, it must be clear beyond a reasonable doubt that a rational jury would have found the defendant guilty even absent the error. Neder v. U.S., 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Said conversely, the question is whether there is a reasonable *1072 possibility that the error affected the verdict. See Brooks v. State, 918 So.2d 181 (Fla.2005); State v. DiGuilio, 491 So.2d 1129, 1130 (Fla.1986).
As to the battery and false imprisonment counts, there is virtually no question but that the overwhelming evidence from the eye-witnesses and from Mr. Bartee himself would have resulted in a conviction for these offenses, even without the erroneously admitted statements. In our view, therefore, there is no reasonable possibility that the error affected the verdict regarding these offenses. Given the deeply conflicting testimony concerning whether Mr. Bartee was authorized to be in the apartment, however, we simply cannot say beyond a reasonable doubt that a rational jury would have convicted him of the burglary charge without the introduction of Ms. Mitchell's statements to the police officer.
Accordingly, we affirm the judgment of guilty and the sentences with respect to the charges of battery and false imprisonment, reverse the judgment and sentence with respect to the charge of burglary, and remand this case to the trial court for retrial of the burglary charge.
AFFIRMED in part, REVERSED in part, and REMANDED.
GRIFFIN and THOMPSON, JJ., concur.
NOTES
[1] Mr. Bartee was found not guilty of the false imprisonment of Ms. Mitchell's child, and not guilty of aggravated assault with a firearm.
[2] The court referenced the "colloquial" use of the word "interrogation" and not the technical legal definition. 541 U.S. at 53, n. 4, 124 S.Ct. 1354.
[3] See also Howard v. State, 902 So.2d 878 (Fla. 1st DCA 2005) and Manuel v. State, 30 Fla. L. Weekly D1248, ___ So.2d ___, 2005 WL 1130183 (Fla. 1st DCA 2005), which follow Lopez. There are various approaches to determining whether hearsay statements are testimonial for the purposes of analysis under Crawford. Some courts have adopted per se rules in which all excited utterances are excluded, while other courts differentiate on a case by case basis between initial questions at the crime scene or "securing the scene" and questions asked in order to investigate and preserve witness statements. See State v. Ohlson, 131 Wash.App. 71, 125 P.3d 990 (2005) (Per se rule that excited utterances are not testimonial); Stancil v. U.S., 866 A.2d 799 (D.C.), en banc review granted, 878 A.2d 1186 (D.C.2005) (statements made while officers were "securing the scene" not testimonial, but statements made after scene secured and officers were "investigating and fact gathering" were testimonial); Hammon v. State, 829 N.E.2d 444, 446 (Ind.), cert. granted, ___ U.S. ___, 126 S.Ct. 552, 163 L.Ed.2d 459 (2005) (holding that "statements to investigating officers in response to general initial inquiries are nontestimonial but statements made for purposes of preserving the accounts of potential witnesses are testimonial"); Commonwealth v. Gray, 867 A.2d 560, 577 (Pa.Super.Ct.), appeal denied, 583 Pa. 694, 879 A.2d 781 (2005) (holding that excited utterances made to the police by witnesses at the scene of the crime were not testimonial because the declarant is not subject to police interrogation and volunteers the information in effort to remedy a "perceived emergency, not to create a record against another for use in a future prosecution"). U.S. v. Hinton, 423 F.3d 355, 361 (3d Cir.2005) (excited utterances made to officers while declarant riding in cruiser in pursuit of suspect testimonial because the declarant knew the officers were acting in their official capacity and investigating a crime.); State v. Maclin, 183 S.W.3d 335 (Tenn.2006) (rejecting per se rules that exempt all excited utterances from the class of testimonial statements and those that disregard the nature of an excited utterance; favoring a totality of circumstances analysis including testimonial hearsay and excited utterance analysis to determine whether statement is testimonial); Wall v. State, 184 S.W.3d 730 (Tex.Crim.App. 2006) (rejecting per se categorical approaches to whether excited utterances are testimonial; holding that "An inquiring court first should determine whether a particular hearsay statement qualifies as an excited utterance. If not, the inquiry ends. If, however, the statement so qualifies, the court then must look to the attendant circumstances and assess the likelihood that a reasonable person would have either retained or regained the capacity to make a testimonial statement at the time of the utterance."); Anderson v. State, 111 P.3d 350, 351 (Alaska Ct.App.2005) (holding that an assault victim's statement to police at the scene of the crime was nontestimonial).