MORRIS, Judge.
Christopher Henderson appeals his conviction for second-degree murder. He raises four issues on appeal; we find merit in only one of his arguments, and we reverse and remand for a new trial.

*474
I. Facts

Henderson’s ex-girlfriend, Loren Spaugh, worked with the victim, Corey Burdette. On the night of Burdette’s death, Burdette was hanging out with Spaugh at Spaugh’s house. Henderson arrived later at Spaugh’s house and engaged in a verbal and then physical altercation with Burdette. During the physical altercation, Henderson stabbed Burdette with a knife that Henderson had been carrying, resulting in Burdette’s death. At trial, Henderson claimed that he acted in self-defense in stabbing Burdette.
Henderson contends that the trial court committed reversible error when it allowed, over a defense objection, double hearsay testimony that Loren Spaugh told Jessica Hicks that Henderson stated “I’ll kill that MF’er,” referring to the victim, Corey Burdette, a month before the charged incident. He argues that the statement was inadmissible hearsay and was highly prejudicial to his defense. The following facts are relevant to this issue.
During the State’s case-in-chief, the State questioned Spaugh, an eyewitness to Burdette’s death, regarding an incident that had occurred at her place of employment a month or so prior to Burdette’s death:
Q. Okay. Now, a month or so prior to December 30th, had there been some kind of an incident at Marco’s Pizza when you and [Burdette] were there and the defendant came in?
A. Yes.
Q. Can you tell the jury a little bit about that?
A. His hand brushed across the small of my back insignificantly. There wasn’t anything groping, just a brush across the small of the back.
Q. When you say “him,” who do you mean?
A. [Burdette].
Q. Okay.
A. And that was it.
Q. Okay. And did — what was the defendant’s reaction or what did he say or do in response to that?
A. He wasn’t thrilled about it, but I don’t remember it being a big deal.
Q. Okay. Did he, meaning the defendant, either say something to you in person or send you a text message that expressed his displeasure?
A. A displeasure, yes. I don’t remember exactly what was said.
Q. Okay. But it wasn’t anything positive?
A. No.
Later, Jessica Hicks, Spaugh’s friend, testified that she was also at Spaugh’s house and witnessed the fight that led to Burdette’s death. During defense counsel’s cross-examination of Hicks, the following exchange occurred:
Q. Okay. And as I understand it, you actually were interviewed five times by the detective?
A. Yes, I believe so.
Q. And on two of the occasions you called him up and told him you remembered something else and you wanted to talk to him?
A. No, that’s not true. I called him twice because he asked me to do something for him.
Q. Okay.
A. And the first time he didn’t answer and the second time I left a voice-mail.
Defense counsel then moved on to other questions.
On redirect examination, the State asked Hicks if a detective questioned her “about an incident that happened a month or so before at the Marco’s Pizza” where *475 Spaugh and Burdette worked. The defense objected on the basis of hearsay, anticipating that the State was “going to get her to say what she was told by Loren Spaugh.” The State responded that it was a prior inconsistent statement of Spaugh because during Spaugh’s testimony, Spaugh stated that she did not recall what Henderson said to her regarding the incident at Marco’s Pizza. The State represented that Hicks “is going to testify that [Spaugh] told her the defendant said, I’m going to kill that MF.” The State also argued that the statement was an admission by the defendant that went to his intent and that the testimony would show “state of mind.” The defense further objected on the basis of section 90.403, Florida Statutes (2010), and argued that even though the defense asked Hicks if she had called the detective on two other occasions, the defense did not open the door to anything.
The trial court allowed the State to proffer the following testimony from Hicks: “[Spaugh] said that [Henderson] got really angry and he said I’ll kill that MF’er.” Hicks testified that this was in response to Burdette’s touching Spaugh at Marco’s Pizza. The trial court then made the following ruling:
THE COURT: ... Now, the circumstance here is one — the record will speak to itself as to what the witness, Loren Spaugh, testified to when she was — received inquiry concerning that incident. It’s being offered as something inconsistent with what she represented here. It’s also being offered apparently, and this caused the [c]ourt a moment’s concern, because it’s coming from Loren [Spaugh] and through her; but it’s being offered to show as well a state of mind at that time or a subsequent time. Plus, I will tell you that counsel with respect you did inquire about those other contacts with Detective Rader and kind of left that out there. This is what that was about. So for all of those reasons, I’m going to overrule the objection.
The defense then asked for a limiting instruction because “a prior inconsistent statement that is admitted to attack the credibility of a witness may not be considered to prove the truth of the contents of the prior statement.” The State responded that it is double hearsay and that “because it’s a statement by the defendant and it would be admissible either through Loren Spaugh or any other witness, ... it is substantive evidence.”
The court then opined that if the statement was only being offered as a prior inconsistent statement, the jury should be instructed but that the statement was in fact being admitted “on more than one bas[is].” The trial court stated that the statement was “made essentially on an 803 basis of state of mind at the time, also to show subsequent acts. It is to show a prior inconsistent statement. It is hearsay within hearsay.” The trial court also ruled that the defense had opened the door by asking Hicks if she had extra contacts with police. The defense asked for a continuing objection, which the trial court allowed.
Before the jury, Hicks testified about the incident at Marco’s Pizza:
A. Oh, well, Detective Rader asked me about an incident that had happened at Marco’s about a month earlier and— involving [Burdette] and [Spaugh] and [Henderson]. I guess [Spaugh] and [Burdette] worked together and [Henderson] was there [and] saw [Bur-dette] touch [Spaugh’s] back and he got really mad.
Q. And did [Henderson] say something to [Spaugh] about that — about that?
*476 A. I don’t know if it was directly at [Spaugh], but I know he said something along the lines of, I’ll kill that MF’er.

II. Analysis

“[E]ach hearsay statement must fall under an exception for [double hearsay] statements to be admissible.” Gosciminski v. State, 994 So.2d 1018, 1026 (Fla.2008) (citing § 90.805, Fla. Stat. (2007)); Charles W. Ehrhardt, Ehrhardt’s Florida Evidence, § 805.1 (2013 ed.) (“Double or multiple hearsay, i.e., a hearsay statement which includes another hearsay statement, is admissible when both statements conform to the requirements of a hearsay exception.”).
Henderson’s statement to Loren Spaugh was an admission by the defendant and was admissible under the hearsay exception in section 90.803(18). See Love v. State, 971 So.2d 280, 286 (Fla. 4th DCA 2008). But Spaugh’s statement to Hicks does not fall within a hearsay exception. The State argued, and the trial court concluded, that Hicks’s'testimony was admissible because it went to “state of mind.” Henderson’s statement to Spaugh may have proven Henderson’s state of mind or may have explained ■ subsequent acts by Henderson, but in Spaugh’s statement to Hicks, Spaugh was the declarant and this portion of the statement was not offered to prove Spaugh’s state of mind or to explain subsequent acts by Spaugh. Cf. § 90.803(3)(a)(1 )-(2) (allowing admission of “[a] statement of the declarant’s then-existing state of mind ... when such evidence is offered to ... [p]rove the declar-ant’s state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action” or “[p]rove or explain acts of subsequent conduct of the declarant”).
As one of its reasons for admitting Hicks’s testimony as substantive evidence, the trial court reasoned that the defense had opened the door by asking Hicks about her multiple contacts with the detective. “As an evidentiary principle, the concept of ‘opening the door’ allows the admission of otherwise inadmissible testimony to ‘qualify, explain, or limit’ testimony or evidence previously admitted.” Ramirez v. State, 739 So.2d 568, 579 (Fla.1999) (quoting Tompkins v. State, 502 So.2d 415, 419 (Fla.1986)).
Because fairness is the key concern of this evidentiary principle, the mere fact that testimony may be characterized as incomplete or misleading does not automatically trigger the admission of otherwise inadmissible evidence under the “opening the door” rule. Rather, the State must demonstrate a legitimate need to resort to such evidence to correct a false impression. Otherwise, the “opening the door” rule threatens to become a pretext for the illegitimate use of inadmissible evidence, and the fairness-promoting purpose of the rule is lost.
In deciding whether fairness requires the admission of evidence under the “opening the door” principle, a court should consider the “general unreliability of inadmissible evidence.” Ramirez v. State, 739 So.2d 568, 580 (Fla.1999). The more unreliable the evidence is, the less likely it is that fairness requires its admission. See id. Hearsay is sometimes admissible under the “opening the door” principle. Nevertheless, the inherent unreliability of hearsay is a factor to be considered when it is sought to be admitted under this principle. See Ramirez, 739 So.2d at 580. In such a situation, “the appropriate inquiry ... is whether based on considerations of fairness, the door was opened wide enough by defense counsel’s questions to permit otherwise inadmissible and unreliable *477 statements to be admitted into evidence.” Id.
Redd v. State, 49 So.3d 329, 333 (Fla. 1st DCA 2010) (citations omitted).
Here, defense counsel’s questions showed that Hicks talked to the detective on five occasions and that Hicks called the detective on two occasions to talk about “something else” she remembered. This questioning tended to suggest that Hicks did not have a good memory of the charged incident. When the State asked its follow-up question of Hicks on redirect, the State clarified that one of the interviews was about the incident at Marco’s Pizza. Even if the State’s redirect question was aimed at correcting a false impression that was caused by defense counsel’s questioning of Hicks, it was not necessary for the trial court to allow the double hearsay statement regarding the incident at Marco’s Pizza. On redirect, the State clarified that the Marco’s Pizza incident was the reason Hicks had spoken to the detective on another occasion, and the details of what Hicks knew of that incident (through hearsay) were not necessary to correct any false impression caused by defense counsel’s questioning of Hicks. See Ramirez, 739 So.2d at 581 (holding that defense counsel opened the door to the State clarifying that codefen-dant’s statement implicated defendant but “[i]t did not open the door to the questions on redirect regarding the details of what [codefendant] stated”); Pacheco v. State, 698 So.2d 593, 595 (Fla. 2d DCA 1997) (holding that defense opened door to question explaining that codefendant had implicated defendant but defense “did not throw the door open wide enough to admit” the substance of codefendant’s hearsay statement to detective). It cannot be said that defense counsel’s questions during cross-examination opened the door wide enough to allow the admission of unreliable and otherwise inadmissible hearsay testimony through Hicks.
The trial court also ruled that Hicks’s testimony regarding Spaugh’s statement was proper impeachment as a prior inconsistent statement by Spaugh. “Florida courts have held that a witness’s inability to recall making a prior statement is not synonymous with providing trial testimony that is inconsistent with a prior statement.” Brooks v. State, 918 So.2d 181, 200 (Fla.2005), receded from on other grounds by State v. Sturdivant, 94 So.3d 434 (Fla.2012). Spaugh did not remember Henderson’s specific reaction to the incident at Marco’s Pizza, and the State never asked Spaugh if she had made a prior statement to Hicks about Henderson’s reaction. It is questionable whether the State could impeach Spaugh, its own witness, when it did not specifically ask her about whether she made a statement to Hicks or whether she remembered the contents of that statement to Hicks. See generally Morton v. State, 689 So.2d 259, 264 (Fla.1997) (“In a case where a witness gives both favorable and unfavorable testimony, the party calling the witness should usually be permitted to impeach the witness with a prior inconsistent statement. Of course, the statement should be truly inconsistent, and caution should be exercised in permitting impeachment of a witness who has given favorable testimony but simply fails to recall every detail unless the witness appears to be fabricating.”), receded from on other grounds by Rodriguez v. State, 753 So.2d 29 (Fla.2000); Brumbley v. State, 453 So.2d 381, 385 (Fla.1984) (“The purpose of allowing evidence of prior inconsistent statements is to counteract the effect of testimony harmful to the interest of the impeaching party”).
But we need not decide whether Hicks’s testimony was properly permitted *478 as a prior inconsistent statement by Spaugh because the required limiting instruction was not given. The trial court ruled that the testimony was admissible as substantive evidence and therefore denied the instruction limiting the testimony for impeachment purposes. Because the trial court erred in admitting the testimony as substantive evidence, the trial court also erred in denying the defense’s request for a limiting instruction. See Ivery v. State, 548 So.2d 887, 888 (Fla. 2d DCA 1989) (“The trial court erred in not instructing the jury that [the witness’s] prior inconsistent statement was relevant only to [the witness’s] credibility and not as proof or evidence of the defendant’s guilt.”); see also Smith v. State, 880 So.2d 730, 735 (Fla. 2d DCA 2004) (“If the State had successfully used the ... statements for impeachment purposes, Smith would have been entitled to a limiting instruction to the jury that the ... witnesses’ prior inconsistent statements were relevant only to the issue of their credibility and not as substantive evidence.”).

III. Conclusion

In sum, we conclude that the trial court erred in admitting Hicks’s double hearsay testimony as substantive evidence because one of the statements did not qualify as an exception to the hearsay rule and because the defense did not open the door wide enough. We also conclude that the statement could not be used for impeachment purposes because the trial court did not provide a limiting instruction to the jury. In addition, the error in admitting Hicks’s double hearsay testimony was not harmless. The content of Hick’s testimony, i.e., that Henderson said “I’ll kill that MF’er” in reference to Bur-dette, the victim, was damaging to Henderson’s defense. It suggested that Henderson had the motive and intent to harm the victim and thus refuted Henderson’s claim of self-defense. Accordingly, we reverse his conviction and remand for a new trial.
Reversed and remanded.
DAVIS, C.J., and NORTHCUTT, J., Concur.