COHEN, C.J.
*626 Christopher Raymond appeals his conviction following a jury trial for attempted second-degree murder by discharging a firearm.[1] We reverse and remand for a new trial.
The State alleged that Raymond attempted to kill his mother, Nicole Raymond, by firing a shotgun over her head when she was in her bedroom. Mrs. Raymond did not testify at the trial. To prove its case, the State heavily relied on the 911 phone call Mrs. Raymond made after the shooting as well as her statements to the responding officers. The State also presented inculpatory statements Raymond made to officers and photographic evidence of the shooting.
Casey Biuk, a 911 communications officer, testified that on the night of the incident, she answered a call from Mrs. Raymond, who sounded distraught. Mrs. Raymond was crying and relayed that her son had just shot at her in her bedroom. Mrs. Raymond told Officer Biuk that "he's going to kill me ... hurry ... please hurry." The State played a recording of Mrs. Raymond's call for the jury.
Deputy Knight, a responding officer, testified that when he entered the residence, Mrs. Raymond was alone in her bedroom, crying hysterically and shaking uncontrollably. Upon Deputy Knight's questioning, Mrs. Raymond detailed the evening's events that led to Raymond firing the weapon. Deputy Knight observed a spent shotgun shell at the foot of the bed as well as evidence on the pillow and wall consistent with the firing of a shotgun.
Deputy Fernandez, who also responded to the scene, testified that upon making contact with Mrs. Raymond, she stated that she had just been shot at by her son and that he fled to his grandmother's house nearby. Deputy Fernandez subsequently approached Raymond at his grandmother's house and testified that as Raymond was exiting the house, he stated, "The devil is going to give her hers ... she's going to get hers." The deputies recovered a shotgun from the grandmother's house and a hooded sweatshirt containing four unspent shotgun shells consistent with the shell recovered from Mrs. Raymond's bedroom.
The State's last witness, Detective Ricci, testified regarding an interview of Raymond conducted upon his arrest. During the interview, Raymond stated that on the night of the shooting, he had been drinking alcohol in the home, then entered his mother's bedroom, fired a shot, and left the residence. Raymond offered no explanation for his actions but expressed remorse for what he had done. The jury heard a recording of the interview.
On appeal, Raymond raises two issues, only one of which merits discussion: the trial court erred in admitting Mrs. Raymond's 911 call with Officer Biuk and the testimony of Deputies Knight and Fernandez regarding statements made by Mrs. Raymond to them. We separately analyze Mrs. Raymond's statements made *627 during the 911 call and to the responding deputies.
Raymond's arguments regarding Mrs. Raymond's statements conflate his right to confront witnesses against him under the Confrontation Clause of the Sixth Amendment[2] and the excited utterance exception to the hearsay rule. These are two distinct analyses. Statements admitted against a criminal defendant must be both nonviolative of the Confrontation Clause and permissible under the hearsay rules. See, e.g., State v. Contreras, 979 So.2d 896 (Fla. 2008).
In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court discussed in depth the history of the Confrontation Clause. The Court held that "[w]here testimonial evidence is at issue ... the Sixth Amendment demands [witness] unavailability and a prior opportunity for cross-examination." Id. at 68, 124 S.Ct. 1354. The Court left open the precise qualities of testimonial statements but provided that "[w]hatever else the term covers, it applies at a minimum to ... police interrogations." Id.
In two consolidated cases, Davis v. Washington and Hammon v. Indiana, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Court defined the nature of testimonial statements. Both cases involved statements officers obtained in the course of their investigations. The Court explained:
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
Id. at 822. The Court found that the statements made by the victim in Davis when calling 911 described events "as they were actually happening" and objectively indicated that their main purpose was to assist police with an ongoing emergency. Id. at 827-28, 126 S.Ct. 2266. The Court held that these statements were nontestimonial and outside the scope of the Confrontation Clause. Id. at 826-28, 126 S.Ct. 2266. In contrast, the statements made by the victim to responding officers in Hammon, when there was no ongoing emergency, described past events and were "part of an investigation into possibly criminal past conduct." Id. at 829, 126 S.Ct. 2266. The Court held that these statements were testimonial and subject to the requirements of the Confrontation Clause. Id. at 829-30, 126 S.Ct. 2266.
We find the circumstances of Mrs. Raymond's 911 call to be akin to those in Davis because her statements described events "as they were actually happening" in order to assist law enforcement with the ongoing emergency she faced. Thus, the statements were nontestimonial and not in violation of the Confrontation Clause. See id. at 826-28, 126 S.Ct. 2266.
The next step in the analysis is to determine whether the statements fall within the excited utterance exception in section 90.803(2), Florida Statutes (2017). "[T]o qualify as an excited utterance, the *628 statement must be made: (1) 'regarding an event startling enough to cause nervous excitement'; (2) 'before there was time to contrive or misrepresent'; and (3) 'while the person was under the stress or excitement caused by the event.' " Pasha v. State, 225 So.3d 688, 707 (Fla. 2017) (quoting Hudson v. State, 992 So.2d 96, 107 (Fla. 2008) ).[3]
We find that Mrs. Raymond's statements made during the 911 call meet these requirements: she called 911 immediately after Raymond shot at her, while under the stress of the shooting, and explained what had just happened before she had time for reflective thought or the capacity for conscious misrepresentation. See id. (finding witness's statements made during 911 call qualified as admissible excited utterances); see also Taylor v. State, 146 So.3d 113, 114-16 (Fla. 5th DCA 2014) (finding victim's statements to law enforcement following shooting were admissible excited utterances because there was no evidence that victim had sufficient time for reflection and the State presented evidence that victim was still in a state of panic as she relayed the events, which had occurred just minutes before); Barron v. State, 990 So.2d 1098, 1101 (Fla. 3d DCA 2007) (finding statements made during 911 call placed immediately after shooting were excited utterances, nontestimonial, and nonviolative of the Confrontation Clause).
Raymond also argues that under Tucker v. State, 884 So.2d 168 (Fla. 2d DCA 2004), the trial court per se reversibly erred by admitting the 911 call without making necessary specific findings that the statements were excited utterances. Raymond is correct that the trial court erred by failing to make any findings prior to admitting the 911 call. See Stoll v. State, 762 So.2d 870, 873-74 (Fla. 2000) (explaining that "[w]hether the necessary state of mind is present" when analyzing if a statement is an excited utterance "is a preliminary fact for the court to determine"); see also Taylor, 146 So.3d at 116 ("Whether the declarant made an excited utterance is a preliminary question of fact for the trial court ...."). However, our review of the record indicates that Raymond failed to bring this deficiency to the trial court's attention with an objection. Cf. Tucker, 884 So.2d at 171 (noting that defense requested that the trial court take evidence as to witness's state of mind, which the court refused); see also § 90.104(1)(a), Fla. Stat. (explaining that a court may predicate an evidentiary error when, in part, "a timely objection ... appears on the record, stating the specific ground of objection ...."). Thus, we find the error unpreserved for our review.
Mrs. Raymond's statements made during the 911 call sit in stark contrast to the statements made to Deputies Knight and Fernandez upon their arrival at the scene. Those statements, explaining in detail the events leading up to the incident, occurred after the threat ceased and were the result of a police interrogation similar to the one conducted in Hammon, intended to capture historical information. See 547 U.S. at 829-30, 126 S.Ct. 2266. Because Mrs. Raymond did not testify at trial, nor was she ever cross-examined, we agree with Raymond that the introduction of these statements violated his Sixth Amendment right to confrontation. See Bartee v. State, 922 So.2d 1065, 1070 (Fla. 5th DCA 2006) (finding statements victim *629 made to officers in response to questioning after incident were testimonial and that the use of statements at trial violated defendant's right to confront victim where victim was unavailable).
The State bears the burden of establishing that this error was harmless under the circumstances of the case. See Contreras, 979 So. 3d at 911; State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986). The entirety of the State's argument as to harmless error is as follows:
VICTIM'S COMMENTS CLEARLY FALL UNDER THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE. ANY ERROR HARMLESS.
The body of the argument within the brief is completely devoid of any analysis or attempt to demonstrate how the error was harmless. That said, we have an obligation to conduct an independent harmless error analysis. Goodwin v. State, 751 So.2d 537, 545 (Fla. 1999).
This was not a case where the fact that a shot was fired or the identity of the shooter were in dispute. However, the nature of Raymond's act was the critical issue at trial. To establish the second element of attempted second-degree murder, the State was required to prove beyond a reasonable doubt that Raymond committed an act "imminently dangerous to another and demonstrating a depraved mind without regard for human life." Fla. Std. Jury Instr. (Crim.) 6.4; § 782.04(2), Fla. Stat. (2017). An act is imminently dangerous if "a person of ordinary judgment would know [it] is reasonably certain to kill or do serious bodily injury to another, and [it] is done from ill will, hatred, spite, or an evil intent, and [it] is of such a nature that the act itself indicates an indifference to human life." Fla. Std. Jury Instr. (Crim.) 6.4.
The evidence established that Raymond fired one shot, at close range, from a shotgun. Unlike a single projectile fired from a rifle, a shotgun shell is loaded with multiple projectiles which spread after being fired. Despite his close proximity, not one projectile struck Mrs. Raymond. The physical evidence reflected that Raymond opened the shotgun and expelled the shell, leaving it at the scene. The evidence also established that Raymond possessed four additional unspent shells but had made no effort to reload and fire a second shot, notwithstanding the State's theory that Raymond attempted to kill his mother.
The issue is not whether the evidence might or might not have been sufficient to support a conviction for second-degree murder. Rather, it is whether the State met its burden of establishing beyond a reasonable doubt that Raymond's conviction for attempted second-degree murder would have been reached even in the absence of the improperly admitted testimony. We find it did not. Because "there is a reasonable possibility that the error affected the verdict," we reverse Raymond's conviction and remand for a new trial. See Bartee, 922 So.2d at 1071-72.
REVERSED AND REMANDED.
WALLIS, J. concurs.
EISNAUGLE, J. concurs specially, with opinion
I agree that admission of the victim's statements to law enforcement violated the Confrontation Clause. I write simply to observe that the error is not harmless beyond a reasonable doubt because the improperly admitted statements were the most direct, and perhaps most damaging, evidence rebutting one of Raymond's primary defenses at trial.

Raymond was convicted under sections 784.04(2), 777.04(1), 775.087(1), 775.087(2)(a)1., and 775.087(2)(a)2., Florida Statutes (2017). However, the correct statute regarding second-degree murder is section 782.04(2), not section 784.04(2), which has been renumbered to section 784.021 and pertains to aggravated assault. See, e.g., Williams v. State, 244 So.3d 1200, 1203-04 (Fla. 1st DCA 2018) (discussing second-degree murder conviction pursuant to section 782.04(2) ).

The Clause states: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Fourteenth Amendment renders the Clause binding on the States. Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

In Michigan v. Bryant, 562 U.S. 344, 361, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011), the Supreme Court noted that the logic behind the determination that statements made during an "ongoing emergency" do not violate the Confrontation Clause is similar to the rationale supporting the admission of excited utterances as sufficiently reliable.