# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D15-5620

_____

MARVIN E. NOACK,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
Kevin J. Carroll, Judge.

December 27, 2018

WINOKUR, J.

Marvin Noack appeals the judgment and sentence following his second trial, at which he was again convicted of second-degree murder and attempted second-degree murder. We reject Noack's argument that he was entitled to discharge because the State failed to try him within ninety days of the reversal of his convictions from his first trial. Noack also argues that his convictions must be reversed due to the trial court's erroneous admission of double-hearsay testimony. We agree and reverse his

second-degree murder conviction, but affirm his conviction for attempted second-degree murder.[1]

## I. *Speedy Trial*

After the State charged Noack in 2008, he waived the speedy-trial time limits set forth in Florida Rule of Criminal Procedure 3.191(a).[2] Noack was convicted, but we reversed his convictions on appeal. *Noack v. State*, 61 So. 3d 1208 (Fla. 1st DCA 2011). The State petitioned for review, which the supreme court denied. *State v. Noack*, 135 So. 3d 290 (Fla. 2014). Ninety-three days after the supreme court denied review, Noack filed a notice of expiration of time for speedy trial under Rule 3.191(h), claiming that the State failed to try him within the ninety-day period after appeal set forth in Rule 3.191(m). The trial court struck the notice and denied Noack's subsequent motion for discharge.

Noack argues that his 2008 waiver no longer applied following the appellate mandate ordering a new trial and that the State was required to try him within ninety days under Rule 3.191(m). He cites *State v. Wilkes*, 694 So. 2d 127 (Fla. 5th DCA 1997), as support and requests we adopt Judge LaRose's view expressed in *Bryant v. State*, 918 So. 2d 331 (Fla. 2d DCA 2005) (LaRose, J., concurring). We review this issue de novo. *See Williams v. State*, 946 So. 2d 1163, 1164 (Fla. 1st DCA 2006).

A waiver of Rule 3.191 rights continues to apply even after an appeal and remand to the trial court. Accordingly, if the accused waived the Rule 3.191 time limits before trial, and on appeal the case is remanded for trial, the ninety-day post-appeal speedy-trial provision of Rule 3.191(m) does not apply. *See Koshel v. State*, 689 So. 2d 1229, 1230 (Fla. 5th DCA 1997); *see also State*

---

[1] We affirm without comment as to the other three arguments Noack raises.

[2] *See Stewart v. State*, 491 So. 2d 271, 272 (Fla. 1986) (holding that a request for continuance prior to the expiration of the applicable time period under Rule 3.191 constitutes a waiver of the time limits under the rule).

2

*v. Bowers*, 1 So. 3d 1120, 1121 (Fla. 1st DCA 2009) (pre-trial waiver applies after mistrial); *State v. Ryder*, 449 So. 2d 398 (Fla. 2d DCA 1984) (same); *State ex rel. Gibson v. Olliff*, 452 So. 2d 110 (Fla. 1st DCA 1984) (same). This rule of law plainly applies to Noack, and demonstrates that the trial court did not err in concluding that Noack's post-appeal motion for discharge was foreclosed by his pre-appeal waiver.

In spite of this clear rule of law, Noack argues that *Wilkes* entitles him to discharge because, even though Wilkes waived the time limits under Rule 3.191(a), the district court still held that the State had ninety days to try Wilkes after the mandate. 694 So. 2d at 128. We disagree that *Wilkes* requires reversal. Wilkes moved for discharge pursuant to Rule 3.191 *prior to* the appeal; in fact, the propriety of the trial court's denial of the discharge motion was the issue on appeal. Rule 3.191(j) states, "If the court finds that discharge is not appropriate . . ., the pending motion for discharge shall be denied, *provided, however, that trial shall be scheduled and commence within 90 days of a written or recorded order of denial.*" In other words, if the trial court denies a motion for discharge because the defendant had waived the time limits, the motion itself revokes the waiver and requires the state to try the defendant ninety days from the order denying the motion. In such a circumstance, there is no reason to apply the pre-trial waiver after the appeal. The district court in *Wilkes* did not, ordering that Wilkes had to be tried within the period permitted by Rule 3.191(m) after the appeal. Nothing of the sort occurred here (or in *Koshel, Bowers, Ryder*, or *Olliff*). Noack did not move for discharge under Rule 3.191 before his first trial, so his waiver of the Rule 3.191(a) time limits remained in place after his appeal.

We also decline to adopt the concurrence in *Bryant*, which would require the State to try the defendant within ninety days of a mandate reversing for new trial even if the defendant had previously waived the Rule 3.191 time limits. 918 So. 2d at 331. This view is inconsistent with *Olliff*, 452 So. 2d at 112, and *Bowers*, 1 So. 3d at 1121, which bind us.[3] But even if we were not

---

[3] We reject Noack's argument that we should treat pre-trial waiver differently for an appellate mandate ordering a new trial

3

bound, we would not adopt this view for two reasons. First, neither Rule 3.191 nor waiver of its time limits affects the constitutional right every defendant has to a speedy trial. *See State ex rel. Butler v. Cullen*, 253 So. 2d 861, 863 (Fla. 1971). Second, even after waiver of the time limits under Rule 3.191, "the defendant still retains the right to demand a speedy trial within sixty days[.]" *Butterworth v. Fluellen*, 389 So. 2d 968, 970 (Fla. 1980). Rule 3.191(b) affords defendants "the right to demand a trial within 60 days, by filing with the court a separate pleading entitled 'Demand for Speedy Trial,' and serving a copy on the prosecuting authority." A defendant who wishes to revoke a pre-appeal waiver of the Rule 3.191 time limits may file a demand after the appeal, which puts the State on notice that it must comply with the time limits of Rule 3.191. This procedure is preferable to one where the defendant can announce an intent to revoke an earlier waiver by springing a notice of expiration on the State and compelling it to try the defendant within the recapture period. Accordingly, we decline Noack's request to reverse our binding precedent. The trial court did not err in striking Noack's notice and denying his motion for discharge.

## II. *Trial*

In this drug deal gone bad, Noack and Nelonza Pugh went into a bedroom to sell marijuana to Fieshiton Smith and Cordell Marcus. Shots were fired from at least two guns inside the bedroom, and responding officers found Marcus shot and transported him to the hospital. Smith fled with a gun in hand, as well as Noack's large bag of marijuana, which he hid at a friend's house before going to the hospital due to his own gunshot wounds. Smith later died due to complications following surgery. Noack and Pugh, who was also shot in his finger, fled the house in their car and returned to Orlando. Marcus, who had nine prior felony convictions at the time of trial, testified that he attempted to purchase a small amount of marijuana from Noack, and Noack was so upset with the size of the purchase that he pulled out a gun and began shooting Marcus. Marcus testified that he did not

---

than following a mistrial, as both are treated equally under Rule 3.191(m).

see Noack shoot Smith and denied seeing Smith attempt to rob Noack or in possession of a gun. Pugh, who was previously convicted of being an accessory to second-degree murder in this incident, also testified for the State. Pugh testified that Smith pulled out a gun to rob Noack and himself, and that Pugh struggled over the gun with Smith, eventually getting shot when it discharged. Pugh denied ever having seen Noack with a gun and did not know how or by whom Smith was shot. Pugh testified that he and Noack immediately drove four hours to Orlando upon fleeing, but could not remember the content of any conversations during this drive.

The State called Kyle Troop, a homicide investigator at the time of the incident who had interviewed Pugh, with counsel present, after finding his DNA at the scene. The prosecutor asked Investigator Troop if, during this interview, Pugh had told him that Noack admitted to shooting Smith. Noack's counsel objected to the question as hearsay within hearsay, arguing that there was no exception for the second link—Pugh's statement to Investigator Troop—and this testimony could at most come in as impeachment evidence with a limiting instruction. The State argued that this testimony came in at Noack's first trial and was necessary as a result of Pugh's untruthful testimony regarding his conversations with Noack following the incident. After counsel reiterated his objection and requested a limiting instruction at minimum, the trial court overruled the objection. Investigator Troop then testified that Pugh had in fact told him that Noack told Pugh that Noack had shot Smith.

### III. *Hearsay Within Hearsay*

We review a trial court's admission of evidence for abuse of discretion; however, this discretion is limited by the evidence code and precedent. *See State v. Crofoot*, 97 So. 3d 866, 868 (Fla. 1st DCA 2012). Noack argues that the trial court erred in allowing double hearsay to be admitted into evidence, specifically that Pugh's statement to Investigator Troop was inadmissible hearsay.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c),

5

Fla. Stat. "Hearsay within hearsay" is admissible if "each part of the combined statements conforms with an exception to the hearsay rule[.]" § 90.805, Fla. Stat.; *see also Gosciminski v. State*, 994 So. 2d 1018, 1026 (Fla. 2008). There is no dispute that Noack's statement to Pugh is admissible as an admission by Noack. § 90.803(18), Fla. Stat. However, we find no hearsay exception for Pugh's statement to Investigator Troop,[4] and the State has never presented a valid reason that this statement is admissible.[5] Thus, the statement could not be admitted as substantive evidence of Noack's guilt. Pugh's statement to Investigator Troop may have been admissible as impeachment evidence, but this question does not need to be answered, for two

[4] We cannot find Pugh "unavailable" due to lack of memory under section 90.804(1)(c), Florida Statutes, because the State argued at trial that Pugh was being untruthful (not that he did not remember) and the trial court consequently made no findings as to Pugh's memory. *See* Charles W. Ehrhardt, *Ehrhardt's Florida Evidence* § 804.1 at 1225 (2018 ed.) (Professor Ehrhardt explaining that "[m]erely asserting a claim of a lack of memory is not sufficient," and the trial court is required "to find that the witness has suffered lack of memory before unavailability results."). Moreover, even had Pugh been unavailable, it does not appear any applicable exception under section 90.804(2) exists.

[5] The fact that the State introduced this testimony without objection at the earlier trial does not permit its admission here. The second basis, argued at trial and now on appeal, is that the statement was necessary due to Pugh's untruthful testimony. *See Rodriguez v. State*, 753 So. 2d 29, 42 (Fla. 2000) (discussing the "opening the door" concept). However, the testimony that the State contends opened the door was elicited by the State on direct-examination of Pugh, its own witness. The State has not explained why it should be able to open its own door, and cannot. *See Brunson v. State*, 31 So. 3d 926, 928 (Fla. 1st DCA 2010) ("This principle is triggered when *one party's* evidence presents 'an incomplete picture' and fairness demands *the opposing party* be allowed to 'follow up in order to clarify . . . and make it complete.'" (quoting *Hudson v. State*, 992 So. 2d 96, 110 (Fla. 2008) (emphasis supplied))).

reasons. First, the trial court denied Noack's request for an instruction limiting the use of the evidence to impeachment of Pugh. *See Henderson v. State*, 135 So. 3d 472, 478 (Fla. 2d DCA 2014) ("Because the trial court erred in admitting the [double hearsay] testimony as substantive evidence, the trial court also erred in denying the defense's request for a limiting instruction."). Second, the State did use the testimony as evidence of Noack's guilt in closing argument, not just to impeach Pugh's testimony.

## IV. *Harmless Error*

The State presents no argument that any error is harmless. "That said, we have an obligation to conduct an independent harmless error analysis." *Raymond v. State*, 43 Fla. L. Weekly D2460, D2461 (Fla. 5th DCA Nov. 2, 2018). Noack presented two defenses at trial: 1) he was not one of the shooters, and 2) if he was a shooter, his actions were justified because Smith attempted to rob him. The jury's finding of guilt demonstrates that it did not believe Smith attempted to rob Noack, and the disputed testimony does not implicate this defense. However, there was no direct evidence that Noack shot Smith aside from the erroneously-admitted testimony of Investigator Troop. Marcus did not see Noack shoot Smith, and Pugh testified that he never saw Noack with a gun, further stating that Smith's gun discharged (at least once) while he and Smith fought over it. In closing arguments, Noack's counsel admitted that Noack was present at the scene to sell marijuana, but disputed that he was the shooter. The State told the jury that Noack "told Mr. Pugh that he was the one who shot [Smith] in the house that day. That's the statement [Noack] made to his friend." We cannot conclude that the double-hearsay testimony was harmless as to the second-degree murder conviction of Smith. In contrast, this testimony as to Smith's shooter was harmless as to the attempted second-degree murder conviction of Marcus, particularly considering Marcus' testimony that Noack shot him multiple times and frank admission that he did not see Noack shoot Smith.

## V. *Conclusion*

We reject Noack's argument that the trial court should have discharged him despite his prior waiver because his Rule 3.191 speedy trial rights "spring anew" upon an appellate mandate ordering a new trial. But we agree that the trial court erred in allowing the admission of double-hearsay testimony by Investigator Troop and in denying Noack's request for a limiting instruction. We find this error harmful as to the second-degree murder conviction and REVERSE this conviction, but find it harmless as to the attempted second-degree murder conviction and AFFIRM this conviction.

BILBREY and JAY, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Steven Edward Woods, Assistant Attorney General, Tallahassee, for Appellee.